[Sac. No. 5660. In Bank. May 29, 1945.]

McCLATCHY NEWSPAPERS (a Corporation), Petitioner,
v. THE SUPERIOR COURT OF SACRAMENTO
COUNTY, Respondent.

Alex J. Ashen, Theo. J. Roche, Downey, Brand & Seymour and Sullivan, Roche, Johnson & Farraher for Petitioner.

Malcolm C. Glenn in pro. per. for Respondent.

Otis D. Babcock, in pro. per., John L. Brannely, William A. White, McCutchen, Thomas, Matthew, Griffiths & Greene,

Allan P. Matthew and Sherrill Halbert for the real party in interest.

GIBSON, C. J.—Petitioner, who is the defendant in an action pending before the Superior Court of Sacramento County entitled Babcock v. McClatchy Newspapers, a corporation et al., seeks a writ of mandate directing respondent court to set aside orders discharging an order to show cause why the plaintiff in that action should not be compelled to answer certain questions and complete his deposition, denying petitioner's motion for an inspection of documents under the control of the plaintiff, and quashing and recalling subpoenas duces tecum served on witnesses who are not parties to the action. Petitioner further seeks to compel respondent court to permit the taking or completion of depositions and the making of an inspection.

In January, 1943, Otis D. Babcock, who will be referred to hereinafter as plaintiff, commenced an action in respondent court against McClatchy Newspapers, hereinafter referred to as defendant, and A. J. Harder, an attorney, for damages for alleged libel. The complaint averred that on August 8, 1942, when plaintiff was District Attorney of Sacramento County and a candidate for re-election, defendant published an article in the "Sacramento Bee" containing the following defamatory matter: "How was it possible for you, Mr. Babcock, going into office dead broke, on a salary of $4,500, to buy an office building at a purported price of $80,000? . . . In contrast to the record of the incumbent Babcock, John Quincy Brown . . . has an exemplary record, both as a member of the bar and in his private life. Sacramento County needs this man." It was further alleged that the article was false; that in publishing the same defendant acted maliciously and with intent and design to injure, disgrace and defame plaintiff; and that defendant intended thereby to be understood, and was understood by readers of the publication, as asserting that plaintiff was a dishonest public official and guilty of corruption in office.

Defendant filed an answer admitting publication of an article which included the passage above quoted and denying the other material averments of the complaint. The answer also contained pleas of privilege, mitigating circumstances and truth or justification. In support of the claim of privi-

lege, defendant alleged that the article containing the asserted libelous matter was a fair report of a challenge issued by Harder to plaintiff to debate publicly certain questions relating to plaintiff's fitness for office; that the article constituted merely a reiteration of a news item previously published in another newspaper of general circulation; that the nature and source of the assets of a public official are proper matters of newspaper comment during a campaign wherein such official seeks re-election; and that the material contained in the article was of interest to the public and was published for public benefit.

As mitigating circumstances, it was alleged that at the time of publication defendant believed with good cause that plaintiff had accumulated property during his term of office not to be accounted for by his salary, and that, to defendant's knowledge, he had purchased an office building at a purported price of $80,000. The plea of justification rested upon allegations to the effect that the statements were true in that during his term of office plaintiff increased his net worth to an extent not reasonably to be accounted for by his salary and that he increased his assets by engaging in private business, including the buying and selling of real estate on a large scale, in violation of section 78 of the county charter which prohibits elective officers from engaging in any private practice or business.

Plaintiff's deposition was originally taken by defendant before an answer was filed in the case. He was questioned generally as to his financial status and transactions while district attorney, and he agreed to allow defendant to examine certain records relating thereto. In reliance upon plaintiff's offer, defendant did not complete its interrogation of the witness, but before the records were examined plaintiff withdrew his consent. The day after defendant filed its answer, it gave notice of the taking of the depositions of named officials of banks, title companies, and brokerage firms. Subpoenas duces tecum were issued directing the witnesses to produce records of plaintiff's bank deposits and withdrawals, loans to and financial statements from him, securities bought and sold by him, and real estate transactions handled for him during the period of his incumbency as district attorney. On the same day, defendant filed and served notice of motion for inspection of records and documents under plaintiff's control, including state and federal

income tax returns during the years he was district attorney, records of his bank deposits and withdrawals as well as of loans procured from and financial statements supplied to named banks during that period, records of his purchases and sales of real estate for the same period, and records of his brokerage account.

Shortly after the filing of the notices, plaintiff demurred to the answer and noticed a motion to quash the subpoenas duces tecum on the ground that they were unreasonable and oppressive in that the issues in the case had not been defined, and that the supporting affidavits failed to disclose the contents of the papers sought to be produced or their materiality and relevancy to the issues. The demurrer to the pleas of mitigation and justification was sustained, and orders were made quashing and recalling the subpoenas duces tecum and denying the motion for inspection.

Defendant thereafter amended its answer. In its defense of mitigation it alleged that at the time of the supposed libel it had knowledge that plaintiff had publicly announced, prior to his election, that he was a "poor man"; that it was aware he had been buying many parcels of realty during his term of office, including an office building in Sacramento; that the purchase of the building at a price of $80,000 had been widely publicized; that defendant therefore believed that plaintiff had gone into office "dead broke"; that plaintiff purchased many properties, including the office building, during his incumbency, and that the public had a right to know these facts and to have an explanation by plaintiff as to the source of his assets; that the publication was without malice; and that defendant did not thereby mean to be understood as asserting that plaintiff was a dishonest public official or guilty of corruption in office.

In support of its defense of justification defendant alleged on information and belief that the factual statement underlying the purported libel was true in that plaintiff had increased his net worth more than $80,000 during his term of office; that he was worth approximately $20,000 when he became district attorney; that after taking office he accumulated property with the result that his net worth exceeded $100,000 at the time of the alleged libel; that he received no property during his term of office by gift, devise, bequest or inheritance; that he was prohibited by law from engaging in private practice or business during his incumbency; and

that the increase in his net worth did not result from his ownership of property acquired before the commencement of his term nor from the receipt of his salary as district attorney. A general demurrer was overruled as to the amended plea of mitigation, but was sustained without leave to amend as to the amended plea of justification.

Thereafter, the court made an order permitting defendant to reopen plaintiff's deposition. Plaintiff refused to answer questions pertaining to the preparation, filing, availability, and contents of income tax returns, the source of income shown therein, and the purchase of real property, including the source and amount of the purchase price thereof. Counsel for defendant stated that he desired to interrogate plaintiff to ascertain the extent to which and the means by which his net worth and income increased after he became district attorney; that defendant intended to show that plaintiff made over $80,000 while district attorney, that his real estate transactions were so great as to constitute doing business in violation of the charter provisions, and that he had practiced law during his incumbency. Plaintiff declined to answer such questions on the ground that they were incompetent, irrelevant, immaterial and without the issues. Application was therefore made by defendant for an order directing him to show cause why he should not be compelled to answer the questions propounded and complete his deposition. Respondent court, sustaining plaintiff's objections, in effect discharged the order to show cause and ruled that plaintiff would be required to answer only the questions directed to whether he purchased designated parcels of realty, that he would not be required to answer the remaining queries, and that defendant would not be permitted to question him along the lines indicated. The present proceeding was then commenced.

Mandamus is the appropriate remedy to secure the enforcement of a litigant's statutory right to take depositions, and an appeal from a final judgment is neither speedy nor adequate where a trial court improperly refuses to order that a deposition be taken. (*Christ* v. *Superior Court*, 211 Cal. 593 [296 P. 612]; *San Francisco Gas & Electric Co.* v. *Superior Court*, 155 Cal. 30 [99 P. 359, 17 Ann.Cas. 933]; *Crocker* v. *Conrey*, 140 Cal. 213 [73 P. 1006]; see *Hays* v. *Superior Court*, 16 Cal.2d 260, 265 [105 P.2d 975].) It is contended, however, that the writ lies only where the trial court fails to exercise its authority, as where it refuses to

issue a commission to take a deposition, and that the writ cannot issue in a proceeding such as this, because the trial court merely acted in a matter within its discretion. ⬛ Ordinarily the trial court has no discretion to refuse to exercise its powers so far as necessary to secure to a litigant the right to a deposition in the cases defined by the code. (*Crocker* v. *Conrey,* 140 Cal. 213, 218 [73 P. 1006]; *Moran* v. *Superior Court,* 38 Cal.App.2d 328, 334 [100 P.2d 1096]; *Scott* v. *Shields,* 8 Cal.App. 12, 16 [96 P. 385]; *cf. Christ* v. *Superior Court,* 211 Cal. 593, 601 [296 P. 612].) ⬛ The language of section 2021 of the Code of Civil Procedure providing that "The testimony of a witness . . . may be taken by deposition" confers upon litigants the *right* to take depositions. (See *Hays* v. *Superior Court,* 16 Cal.2d 260, 264 [105 P.2d 975].) ⬛ It is true that in the Hays case this court held that the trial court could, in its discretion, defer the taking of a deposition until the determination of a pending appeal of the cause in which the deposition was to be used, and, similarly, in *Patrick Farms, Inc.* v. *Superior Court,* 13 Cal.App.2d 424 [56 P.2d 1283], it was held proper to continue the taking until it was determined in another action then pending whether plaintiff had the right to maintain the action in which the deposition was sought. It was pointed out in the Hays case, however, that "If . . . the trial court acts . . . in such manner as to deny the right rather than to exercise merely a reasonable control over the exercise of the right, . . . its actions would be controlled by *mandamus* or other appropriate remedy." (16 Cal.2d at p. 265.) The case now before us illustrates this distinction. There is a difference between a deferment of the right or conditional refusal to compel a witness to give a deposition and the unreserved refusal to compel a witness to complete his deposition or answer proper questions on the taking thereof. Here the court was passing upon the materiality and relevancy of the questions contained in the deposition, and its ruling, if improper, would in effect require defendant to proceed to trial without the benefits afforded by the deposition to which it is entitled under the code. This does not involve a matter within the discretionary powers of the trial court but, rather, the enforcement of a legal right of a party to the action. Although in the Hays and Patrick Farms cases the deferment of the time of taking the deposition was deemed justified by reason of special cir-

cumstances, there is no suggestion in those cases that it would be proper to compel a party to proceed to trial without a deposition for which a proper request had been made.

By refusing to compel a witness to answer proper questions, a trial court may effectively deny a litigant the right to take a deposition, since a right without means of enforcement, if such can exist, is of little practical value. Consequently, trial courts have been directed by writ of mandate to compel witnesses to answer questions on the taking of their depositions on the theory that it is their judicial duty to secure to a party the means of obtaining in advance of the trial information concerning the issues and the means of producing at the trial the evidence necessary to sustain his action or defense. (*Crocker* v. *Conrey,* 140 Cal. 213 [73 P. 1006] ; *Wissman* v. *Cabaniss,* 34 Cal.App. 487 [168 P. 150] ; *Johnston* v. *St. Sure,* 50 Cal.App. 735 [195 P. 947] ; *Scott* v. *Shields,* 8 Cal.App. 12 [96 P. 385].)

It is argued that if mandamus will lie whenever a court refuses to direct a witness to answer a question, the trial of actions will be delayed and the appellate courts will be deluged with petitions. In this case, however, it was stipulated on submission of the order to show cause that any questions similar to those asked of plaintiff "or along the line indicated by defendant's counsel" would be objected to by plaintiff and that the witness would decline to answer. The defendant is thus attempting to enforce its right to question plaintiff along the general lines indicated in the stipulation and, as will more clearly appear hereafter, the problem presented is not limited to the materiality of specific questions but involves the determination of the permissive scope of examination upon the taking of a deposition.

The respondent court declined to compel plaintiff to answer the questions upon the ground that they were directed to defenses which had been eliminated by the ruling on demurrer, and that therefore the answers would be incompetent and immaterial as not within the issues. While the order on demurrer ruled out certain issues for the time being, the status of the pleadings as so limited is not the exclusive measure of the scope of inquiry on deposition. Different principles govern the determination of the materiality of evidence sought to be obtained by means of depositions and the admissibility of evidence offered upon the trial. The relevancy of evidence on the taking of a deposition is to be

determined by the subject matter of the action and by the potential as well as actual issues in the case. (Code Civ. Proc., §§ 2065, 2066; *San Francisco Gas & Electric Co.* v. *Superior Court,* 155 Cal. 30 [99 P. 359, 17 Ann.Cas. 933]; *Most* v. *Superior Court,* 25 Cal.App.2d 394 [77 P.2d 532]; *Rossbach* v. *Superior Court,* 43 Cal.App. 729 [185 P.879]; *Kibele* v. *Superior Court,* 17 Cal.App. 720 [121 P. 412]; see 26 C.J.S. 815, 886.) In *San Francisco Gas & Electric Co.* v. *Superior Court, supra,* where defendant sought to take the deposition of a witness while the case was pending on appeal, this court said: "As soon as the summons has been served either party may commence the taking of depositions relevant to any possible issue that may arise upon a denial of the allegations of the complaint or upon the allegation of new matter in the answer . . . the real question is not whether . . . testimony would be material to the issues which were tried, but whether it will be material on a new trial, and under such an amendment to the answer as the circumstances of the case would warrant the court in allowing." (155 Cal. at pp. 34, 39.) And in *Rossbach* v. *Superior Court, supra,* where plaintiff sought to take the deposition of the defendant after a general demurrer to the complaint had been sustained, the court stated that "plaintiff's right to have defendant's deposition depends not alone upon whether it is material to issues tendered [by the complaint] but the right thereto is equally clear if it would be material to any possible issue raised by new allegations contained in an amended complaint which the court might properly permit plaintiff to file." (43 Cal. App. at p. 731.)

The fact that the ruling on demurrer eliminated the issues embraced by the deposition does not prevent such issues from being classed as potential. ▮ The sustaining of a demurrer relates only to the issues raised by the pleadings as they exist at the time of the ruling on the demurrer. A trial court may nevertheless properly permit an amendment to the pleadings during the course of trial; it may reconsider its ruling during trial; or the ruling may be reversed upon appeal. Thus if, in the present case, evidence of plaintiff's financial transactions would be relevant to such potential issues, defendant would be entitled to take his deposition along the lines suggested.

▮ The questions that plaintiff refused to answer related

to the extent and means by which his net worth and income increased, if at all, after he became district attorney. Although these matters may not be relevant under the pleadings as limited by the ruling on demurrer, they clearly are relevant to possible or potential issues which might properly be raised during the course of this action. For example, the truth or falsity of the alleged libel is an actual or potential issue, which directly or indirectly involves the sources of plaintiff's income during his term of office. Since the evidence that defendant sought to obtain by the deposition related to actual or potential issues, it is relevant, and defendant is entitled to complete the taking of the deposition.

The next question is whether the defendant has made a sufficient showing in support of its motion for an order of inspection of plaintiff's papers relating to his transactions with banks and his dealings in real estate and securities. Plaintiff makes the familiar contention that the object is a mere "fishing expedition" through his private papers, in violation of the constitutional guaranty against unreasonable searches and seizures, and claims that the affidavit is too general and does not state positively or with particularity what documents are sought or what facts each paper will establish.

The right to have an inspection of papers and documents in the hands of a party to the action or a third person is governed by different rules from those applying to depositions. A party or witness has a constitutional right to be free from unreasonable searches and seizures, and it is therefore incumbent upon the one seeking an inspection to show clearly that he has a right thereto and that the constitutional guaranties will not be infringed. Hence, the affidavit in support of the demand for inspection must identify the desired books, papers and documents and it must clearly show that they contain competent and admissible evidence which is material to the issues to be tried. The affiant cannot rely merely upon the legal conclusion, stated in general terms, that the desired documentary evidence is relevant and material.

Petitioner contends that under the decision in *Union Trust Co.* v. *Superior Court,* 11 Cal.2d 449 [81 P.2d 150, 118 A.L.R. 259], these rules must be liberally applied and that it has met the requirements there imposed. In that case after an exhaustive examination of the history and development of discovery, the court stated that "the trend of judicial

decisions is to relax the rules which relate to the taking of evidence by ancillary proceedings, of which the inspection of documents is one method, to the end that the trial of actions may be expedited and justice be more efficaciously and speedily administered." (11 Cal.2d at p. 462.) **The** relaxation of the rule, however, does not mean an abolition of the requirements that the papers be identified and that they be shown to be relevant and material. ▮ The theory is that the statutory proceeding of inspection is remedial in character, and that the right of inspection should be encouraged as an aid to the proof of issues before the court. Accordingly, if it is shown that the documents contain material evidence, it is sufficient if they are identified by a description that can be reasonably understood by the adverse party. While the Union Trust Company case related to an action arising out of an alleged violation of duty under an express trust, the existence of a fiduciary relationship was only one factor considered by the court in reaching its conclusion and, as pointed out by defendant, the opinion supports a liberal application of the rule irrespective of the relationship of the parties. The affidavit therein incorporated by reference certain allegations of the pleadings from which it was apparent that evidence in the described records was material. ▮ In the present case the defendant has not brought itself within the rule for it has not alleged sufficient facts to show the materiality of the desired evidence.

In considering the sufficiency of the showing in support of the demand for inspection, we will assume, without so deciding, that the defenses of justification, mitigation and privilege have been adequately pleaded. The affidavit avers that plaintiff had certain business and financial transactions with various banks, that he bought and sold securities through a stockbroker, that he engaged in various real estate transactions and that he made state and federal income tax returns. The affidavit does not specify or particularly describe any papers or documents involving those transactions, but merely states, as to each type of document, the general conclusion that "the matters" or "the records and transactions" in question "are relevant and material in the above entitled action and to the issues therein and the defense thereof." Nowhere in the affidavit is there any more specific averment as to the contents of any one or more of those papers and

documents, or as to what facts, if any, would or could be proved thereby.

It appears to be defendant's theory that plaintiff made profits and increased his assets during his term of office by means of private practice and business transactions in which he was prohibited from engaging by the terms of the county charter, and that these facts will appear from an examination of the records and documents in question. It may be admitted that, if such is the case, then some of the records and documents would probably show those ultimate facts, but it cannot be said that they must necessarily show such facts or any of them, nor can it be said, on the basis of defendant's affidavit, that their relevancy and materiality clearly appear. Although it would be unjust to permit plaintiff to recover for an alleged libel by suppressing or withholding evidence which is material or vital to the action, defendant must first show the materiality of the desired evidence and cannot obtain permission to search through all of plaintiff's papers and records merely in the hope or expectation that the investigation will disclose favorable information.

 Compliance with the rule requires more explicit averments in the affidavit than are present here, and may involve information which defendant does not now have, but it is not thereby deprived of the right or ability to defend, since it is entitled, before going to trial, to complete plaintiff's deposition. If the defendant, on deposition, is accorded its right to examine plaintiff as to the identity and contents of the papers and documents pertaining to the defenses of justification, mitigation and privilege, it may thereby secure the necessary information for use in making an affidavit which will disclose to the court the identity of the desired evidence and its materiality and relevancy to the issues presented in the libel action.

 What has been said applies with equal force to defendant's attempt, by supoena duces tecum, to inspect papers and documents in the hands of third parties. The affidavit does not specifically describe any papers or documents, or their contents, but merely refers to various financial and business transactions, and avers generally that the records thereof, in the hands of the respective witnesses, are relevant and material.

It follows that defendant is not entitled, on the present showing, to compel an inspection of documents in the hands

of plaintiff or the third parties, but it is entitled to a writ of mandate directing respondent to set aside its orders preventing the completion of plaintiff's deposition and to make the necessary orders to effectuate those proceedings in accordance with the views expressed in this opinion. Let the writ issue accordingly.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the conclusion reached but I cannot agree with much that is said in the majority opinion relative to the power of a trial judge to control the taking of depositions, and, particularly, with reference to what the trial judge in the case at bar failed to do or should have done in the exercise of his judicial power.

The specific problem presented is whether a party to an action may, as a matter of right, require a witness to answer questions on the taking of his deposition relevant only to issues which have been eliminated from the case by dismissal of the cause of action or defense which raised such issues. This problem has been the subject of considerable controversy among trial judges and lawyers. The decisions of this court and of the District Courts of Appeal on the subject are in hopeless conflict, and it is little wonder that trial judges should have difficulty in determining the proper course to pursue when problems of this character are presented to them. One line of cases headed by *San Francisco Gas & Electric Co.* v. *Superior Court,* 155 Cal. 30 [99 P. 359, 17 Ann.Cas. 933], answers this question in the affirmative. Another line of cases headed by the case of *Hays* v. *Superior Court,* 16 Cal.2d 260 [105 P.2d 975], answers it in the negative. The majority opinion answers it in both the affirmative and negative, as it cites the Hays case with approval and then attempts to distinguish it from the case at bar.

The majority opinion does not fairly state either the factual situation or the legal problem involved. From the record as presented to this court it appears that plaintiff brought an action for libel against the defendant (petitioner herein) in the Superior Court of Sacramento County. Defendant answered denying certain allegations of the complaint and pleading eight separate defenses. The trial court sustained without leave to amend, a demurrer to the fourth, seventh and

eighth separate defenses. Thereafter defendant sought to take plaintiff's deposition on the issues raised by the defenses to which the demurrer had been sustained without leave to amend. To this end certain questions were propounded to plaintiff, but he refused to answer them on the ground that they were not within the issues. Application was made to the trial court to require him to answer the questions so propounded, and the trial court denied the application with the following written opinion:

"According to a stipulation filed herein on the taking of the deposition of Otis D. Babcock, a number of questions were asked him to which his counsel objected on the grounds that the questions were incompetent, outside of the issues, and have previously been ruled on by the Court as incompetent, and said counsel advised the witness to refuse to answer for the reasons stated, and thereupon the witness declined to answer the questions, or any of them.

"Counsel for defendant then stated his reasons for desiring to so interrogate the witness, and stated that he particularly desired to interrogate the witness to elicit information relating to matters set forth in the fourth, seventh and eighth defenses of defendant's answer, and also to show that plaintiff made over $80,000 while District Attorney, and 'that his real estate transactions were so great as to constitute doing business and detract from his duties as District Attorney and that he engaged in private business and practiced law while District Attorney.'

"The last amendments to the pleadings filed by defendant were to the fifth and seventh separate defenses. The Court overruled the demurrer to the fifth defense, but sustained the demurrer to the seventh, without further leave to amend. The Court had previously sustained the demurrer to the fourth and eighth defenses without further leave to amend. The fourth defense was passed on in two opinions previously rendered, and the order was that the demurrer thereto be sustained without leave to amend, as previously stated.

"From the foregoing it will be noted that so far as the defenses referred to are concerned, they have been eliminated; hence, if the questions are directed to those defenses alone, the answers would be incompetent and immaterial, as not within the issues.

"In the stipulation counsel for defendant stated that he desired to interrogate the witness to find out, . . .

"1. To what extent, if at all, his net worth and income increased after he became district attorney; also (2) if he did increase his net worth and income by what means he did it and where his funds, money and assets came from;

"For the above purpose counsel stated he desired to examine into the witness' financial transactions and records while he was district attorney, including for the period,—

"(a) Federal and state income tax returns, (b) records of real estate acquired by him; what he paid for it and where the money came from, including records of real estate transactions at various title insurance companies; (c) deposits and withdrawals by plaintiff at various banks, also plaintiff's brokerage account at Dean Witter & Company bond house.

"The first six questions propounded to the witness related to his state and federal income tax, whether he had filed same, whether he had copies, and a request to produce them at the trial, and the witness was asked if he would do so.

"The next six questions related to the income of the witness for the years 1935-42, how the gross '35 income compared with that of 1937; whether the income tax returns showed deductions for certain losses; and what, if any deductions were made in said years for certain oil royalties, mining and other oil stock. Interrogatory 12 is general:

"'State generally the sources from which you derived income as shown by your income tax returns from 1935 to 1942, inclusive.'

"The last question relates to some twenty real estate transactions, the descriptions of the land being briefly given, and the witness having been asked to state as to each piece when he secured the same, what he paid down, and where he got the money to make the down payment.

"*Defendant does not specify or point out where these questions, or any of them, relate to any of the issues contained in the pleadings.*

"The fifth separate defense, as last amended, was demurred to and the demurrer overruled as above stated. This is a defense based on mitigating circumstances. In *Wilson* v. *Fitch,* 41 Cal. 363, at page 380 (and later cases are to the same effect) the Court points out that defendant, with a view of reducing damages, should be allowed to prove the 'mitigating circumstances', that is to say, the circumstances under which the publication was made, and the real motive which induced it. And in the short opinion filed in ruling on the fifth de-

fense the Court also referred to *Davis* v. *Hearst,* 160 Cal. 143, at pages 193, 194 [116 P. 530], in which the Court states what section 461 means;

" 'If a defendant pleads justification, he may at the same time plead with his affirmance of good faith and honest belief all facts and circumstances within his knowledge at the time of the publication which support that knowledge and belief, even if they tend to establish the truth of the charge. Moreover, if he desires to plead justification, and also the truth or partial truth in mitigation, he must plead those facts and circumstances in mitigation, in which event they will be considered (as they never were or could have been at common law after *Underwood* v. *Parks*). Even if the justification fails these matters will be considered by the jury upon the question of malice.'

"It is not intended to intimate that only the facts pleaded in mitigation may be proven at the trial.

"Defendant based its allegation in the published article with regard to plaintiff having gone into office 'dead broke' upon its knowledge that he had said that he was a 'poor man' etc. This is all the information on that subject which defendant claims to have had, or at least all that is set forth in the fifth separate defense. The next fact stated, that was within the knowledge of defendant, was that it was known by defendant and was a fact that plaintiff had been buying many pieces of real property in and around Sacramento, etc. This knowledge and facts I think constitute surrounding circumstances, and may be proven. Then there are the allegations with regard to the Bryte building, and defendant's source of information. This defendant has a right to offer in evidence.

"There is an affirmative averment that at the time of the publication of the said alleged defamatory matter defendant did not believe, and does not now believe that the said alleged defamatory matter charged that plaintiff was a dishonest public official or that he was guilty of corruption while occupying the office of district attorney. There is also an averment with regard to defendant's good faith. The last sentence of the defense is as follows:

" 'That defendant honestly and in good faith believed and always has believed that said alleged defamatory matter makes no charge whatever but asks without malice a fair and proper question of a public officer.'

"It seems to the Court that *the affirmative facts as known to defendant at that time upon which the plea of mitigation* is founded, as set forth in said defense constituting the surrounding circumstances would be entitled to be received in evidence. In other words, defendant is entitled to prove all the surrounding facts known to it and upon which it based the publication of the article.

"The only interrogatories which appear to touch the allegations of the fifth separate defense are those relating to the real estate purchased by defendant. The allegations of the said defense with which defendant had knowledge relate to the purchase of said real estate generally, including the Bryte building, and the amount thereof as reported by the broker etc.

"None of the questions propounded to the witness bears on the issues presented, except a part of question 13, involving whether defendant purchased the various parcels of real estate mentioned, and when he purchased the same.

"If defendant had a plea of justification, then, depending on the issues thereby raised, it is probable that all the questions might be material; but, as heretofore pointed out, there is, in the Court's opinion, *no plea of justification*. And, as heretofore stated, *the plea of mitigation* depends on defendant's knowledge of the facts at the time of publication, together with the surrounding circumstances. Any questions touching these matters would be proper, and the Court has endeavored to permit latitude to cover any and all such matters.

"An order will be entered directing plaintiff to answer such interrogatories as are herein pointed out as being admissible under the issues as settled by the pleadings, including any surrounding circumstances at the time of the publication complained of. Plaintiff will not be required to answer questions 1 to 12, inclusive, and only that part of question 13, as indicated above." [Italics added.]

As I understand the majority opinion it holds that the trial court had no power to do otherwise than to require plaintiff to answer the questions so propounded even though they were not in response to any issue remaining in the case. At least, the majority opinion does not hold that the questions so propounded are relevant to any issues other than those raised by the fourth, seventh and eighth separate defenses which have been eliminated from the case by the order

of the trial court sustaining a demurrer thereto without leave to amend. In other words, the majority opinion does not purport to hold, contrary to the opinion of the trial judge, that the questions which the trial judge refused to require plaintiff to answer are in response to any issue in the case on the pleadings as settled at the time the questions were propounded.

Notwithstanding the failure of the majority opinion to pass upon the competency or relevancy of the evidence which defendant sought to elicit by the answers to said questions, the opinion purports to hold that said questions were proper. Said opinion states:

"There is a difference between a deferment of the right or conditional refusal to compel a witness to give a deposition and the unreserved refusal to compel a witness to complete his deposition or answer *proper* questions on the taking thereof." The query immediately arises as to whether a question is *"proper"* if it is not in response to any issue in the case. The trial court held that the questions so propounded were not "proper" because they were not so responsive. The majority opinion further states:

"Here the court was passing upon materiality and relevancy of the questions contained in the deposition, and its ruling, if improper, would in effect require defendant to proceed to trial without the benefits afforded by the deposition to which it is entitled under the code." In other words, the majority opinion without determining whether or not the questions so propounded were in response to any issue in the case, purports to hold that the defendant was nevertheless entitled to have said questions answered before going to trial upon issues to which said questions had no relevancy or materiality. The majority opinion does not attempt to indicate how a party can be prejudiced by going to trial without being permitted to take a deposition *which he cannot use at the trial* because it is irrelevant to the issues being tried. In this respect the majority opinion is confusing and misleading and does not fairly present the legal problem involved in this case. It demonstrates a lack of appreciation of the broad concept embraced within the provisions of section 2021 of the Code of Civil Procedure which clearly contemplates the taking of depositions for the purpose of procuring and preserving evidence which may have some relevancy to any possible issue involved in the case regardless of whether

such evidence may be used at a contemplated trial (*Kibele* v. *Superior Court,* 17 Cal.App. 720 [121 P. 412], as this section gives a party the absolute right to take a deposition after a trial and judgment and while the case is pending on appeal. (*San Francisco Gas & Electric Co.* v. *Superior Court,* 155 Cal. 30 [99 P. 359, 17 Ann.Cas. 933].) The obvious reason for this confusion is that the majority opinion attempts to distinguish the situation in the case at bar from that existing in the case of *Hays* v. *Superior Court, supra,* and *Patrick Farms, Inc.* v. *Superior Court,* 13 Cal.App.2d 424 [56 P.2d 1283], where it was held that a trial judge has discretionary power to control the taking of depositions, and that he may, in the exercise of such power, defer the taking of a deposition on issues not presently before the court. In other words, the majority opinion in attempting to distinguish this case from the Hays and Patrick Farms, Inc. cases, has injected into this case a false quantity or a factor which is not present, namely, that the questions here propounded were proper questions, which implies that they were responsive to issues now before the court in the case at bar.

In my dissenting opinion in the Hays case I pointed out the conflict between the holding in that case and all of the other decisions in this state with the exception of *Patrick Farms, Inc.* v. *Superior Court, supra.* That conflict should be obvious to anyone who has the mental capacity to read and understand the decisions. It is squarely presented in the case at bar and should be met. The majority opinion attempts to evade it, and in so doing it simply adds confusion to that which already exists upon the subject.

I can see no legal distinction between the situation in the case at bar and that existing in the Hays case so far as the law applicable thereto is concerned. In the case at bar the trial judge sustained a demurrer without leave to amend to the fourth, seventh and eighth separate defenses in defendant's answer. This was a determination by the trial court that the issues raised by said defenses should be excluded from the case, and the ruling of the trial court thereon can be reviewed on appeal from the final judgment in the action. But until such ruling is set aside by the trial court or reversed on appeal, the issues raised thereby are no longer in the case. In the Hays case the trial court granted a motion of defendant to dismiss the action for want of prosecution and plain-

tiff appealed. While the case was pending on appeal plaintiff sought to take defendant's deposition. The trial court denied plaintiff's application to require defendant to answer questions or to give her deposition upon the ground that the action had been dismissed and that defendant should not be required to give her deposition until the judgment of dismissal was reversed on appeal. This court held in the Hays case that the trial court properly exercised its discretion in so holding and that plaintiff had no absolute right to take defendant's deposition while the case was pending on appeal.

While the majority opinion cites the Hays case with approval, the inescapable effect of the holding in the majority opinion is diametrically opposed to the basic concept on which the Hays case was decided. The Hays case holds that a trial judge may in his discretion defer the taking of a deposition directed to an issue which has been eliminated until such issue has been restored or revived. The majority opinion holds that the trial judge has no such power, yet it approves the Hays case and attempts to distinguish it by devious and specious reasoning. It quotes an excerpt from the majority opinion in the Hays case to the effect that if the trial court acts in such manner as to deny the right to take a deposition rather than to exercise merely a reasonable control over the exercise of the right, its action would be controlled by mandamus. It then states: "The case now before us illustrates this distinction. There is a difference between a deferment of the right or conditional refusal to compel a witness to give a deposition and the unreserved refusal to compel a witness to complete his deposition or answer proper questions on the taking thereof." But wherein does that difference lie? If the trial judge says: "I will not direct the witness to answer because there is no issue now pending to which the answers would be relevant," is he not in effect deferring the inquiry until the issue arises? And is there any difference in legal effect whether the issue is eliminated by order of the court granting a motion to dismiss a cause of action or by sustaining a demurrer thereto or to a separate defense without leave to amend? Certainly not. And if a trial judge has power, as was held in the Hays case, to defer the taking of a deposition until a judgment of dismissal is reversed on appeal, he likewise has power to defer the taking or completion of a deposition relating to a defense which has been eliminated by sustaining a demurrer thereto without

leave to amend. Any attempt to make a distinction between these two situations leads to an impasse where reason and logic are supplanted by a mere *ipse dixit.*

I do not agree with the holding of this court in the Hays case, and I pointed out in my dissenting opinion in that case that such holding was contrary to all of the decisions of this court and the District Courts of Appeal except the case of *Patrick Farms, Inc.* v. *Superior Court, supra.* I am still of the opinion that the holding in the Hays case was erroneous and that it is clearly contrary to the following well considered decisions of this court and the District Courts of Appeal. (*Burns* v. *Superior Court,* 140 Cal. 1 [73 P. 597]; *Crocker* v. *Conrey,* 140 Cal. 213 [73 P. 1006]; *Scott* v. *Shields,* 8 Cal. App. 12 [96 P. 385]; *San Francisco Gas & Electric Co.* v. *Superior Court,* 155 Cal. 30 [99 P. 359, 17 Ann.Cas. 933]; *Kibele* v. *Superior Court,* 17 Cal.App. 720 [121 P. 412]; *Rossbach* v. *Superior Court,* 43 Cal.App. 729 [185 P. 879].) Under the rule announced in these cases: "As soon as the summons has been served either party may commence the taking of depositions relevant to any possible issue that may arise upon a denial of the allegations of the complaint or upon the allegation of new matter in the answer . . . the real question is not whether . . . testimony would be material to the issues which were tried, but whether it will be material on a new trial, and under such an amendment to the answer as the circumstances of the case would warrant the court in allowing." (*San Francisco Gas & Electric Co.* v. *Superior Court,* 155 Cal. 30, 34, 39 [99 P. 359, 17 Ann.Cas. 933].) If such is the rule, there is no room for the exercise of a discretion by the trial judge to defer the taking of a deposition until there is a determination that the questions propounded are relevant to an issue which may be tried. The sole power of the trial court is to determine whether or not the proposed question is designed to elicit evidence which may be relevant or material to any possible issue which may arise within the legitimate scope of the pleadings in the case. And should the trial judge refuse to grant an application of the party to require a witness to answer questions which the party claims to be relevant and material, and mandamus is sought to compel the judge to grant such application, the question to be determined by the appellate court is whether or not the questions so propounded are relevant and material

to any possible issue in the case. Under the rule announced in the last cited cases, I am of the opinion that the questions propounded to the plaintiff were relevant and material to possible issues which might be properly raised before the final determination of this case, and therefore the trial judge should have granted defendant's application to require plaintiff to answer said questions. In reaching this conclusion, I do not wish to be understood as holding that in my opinion the trial judge erroneously sustained plaintiff's demurrer to defendant's fourth, seventh and eighth separate defenses as I do not consider it the function of this court in a mandamus proceeding to pass on the rulings of the trial court in the settlement of the pleadings in an action. These rulings can only be reviewed on appeal from a final judgment (*Bank of America* v. *Superior Court*, 20 Cal.2d 697 [128 P.2d 357]).

The majority opinion in the case at bar does not purport to hold that the trial judge abused his discretion in denying defendant's application to require plaintiff to answer the questions propounded to him. In my opinion the decision of the trial court in this case is in clear accord with the holding in the Hays and Patrick Farms, Inc. cases, and if the rule in those cases is sound, then the only basis upon which the trial court's decision in the case at bar can be annulled, is to hold that the trial judge abused his discretion in denying defendant's application to require plaintiff to answer the questions propounded to him. As stated above, the majority opinion is not based upon this ground, but it holds that defendant as a matter of right was entitled to have plaintiff answer questions which were not in response to any issue in the case and that the trial court had no discretion in ruling on defendant's application but was required to grant the application even though the questions propounded to plaintiff sought to elicit evidence which was not responsive to any issue in the case in accordance with the pleadings as then settled.

The majority opinion erroneously states:

"The defendant is thus attempting to enforce its right to question plaintiff along the general lines indicated in the stipulation and, as will more clearly appear hereafter, *the problem presented is not limited to the materiality of specific questions* but involves the determination of the permissive scope of examination upon the taking of a deposition." This statement is clearly inaccurate as the petition for a writ of mandate herein sets forth in *haec verba* the thirteen questions

which were propounded to plaintiff and which he refused to answer, and application was thereupon made to the trial court for an order directing plaintiff to answer said questions. As before stated, the trial court denied this application so far as it related to the first twelve questions but granted it as to a part of the thirteenth question. By this proceeding petitioner seeks to compel the trial court to order plaintiff to answer all of said questions and also as stated by counsel for defendant, to permit him 'to interrogate the witness to find out to what extent, if at all, his net income and worth increased after he became district attorney, also if he did increase his net worth and income, by what means he did it and where his funds, money and assets came from.'' In disposing of petitioner's application the trial court said in part: ''An order will be entered directing plaintiff to answer such interrogatories as are herein pointed out *as being admissible under the issues as settled by the pleadings,* including any surrounding circumstances at the time of the publication complained of. Plaintiff will not be required to answer questions 1 to 12, inclusive, and only that part of question 13th, as indicated above.'' It therefore appears that we are called upon in this proceeding to pass upon the relevancy and materiality of the evidence which counsel for defendant sought to elicit from plaintiff as was disclosed by the 13 questions propounded to him and the statement of counsel for defendant as to the scope of further inquiry which he desired to make by other questions to be propounded along the same general line.

In my opinion these questions were all relevant and material to the issues of truth of or justification for the published article on which the complaint is based, and therefore they are well within the realm of possible issues which can be inquired into by the taking of depositions even though the specific questions might be objectionable if they were propounded to the witness during the trial.

Of course, it is obvious that in the taking of a deposition it is not permissible to propound questions for the purpose of eliciting evidence which under any theory could not be relevant or material to any possible issue in the case.

Finally, I believe it may be said that there are two situations in which the acts of the trial court may come before this court on mandamus. (1) In allowing or refusing to allow the taking of the deposition in toto; (2) In refusing to compel the wit-

ness to answer the questions propounded on the taking of the deposition, where the taking of it has been allowed and there is no question as to the right to take such deposition. I believe that this case falls within the second class. It may be that in the first class the issue would arise as to materiality or relevancy of the issues *proposed* to be developed by the deposition. In such case the trial court has no discretion to refuse to allow the taking of a deposition covering possible issues, if their elimination from the case is not final, that is, as long as they may reenter the case because of a reversal on appeal or a change in ruling by the trial court. In the second class the issues of the relevancy and materiality are squarely presented, as the trial court is first called upon to determine whether the questions which the witness has refused to answer are designed to elicit evidence relevant to any possible issue in the case, and this court is then compelled to pass directly upon the propriety of the ruling of the trial court, because, if the issues raised are under no possibility relevant to the case, the trial court will not be compelled to command the witness to answer. It may be that the reason for a total lack of relevancy is the same as the basis for the ruling on the demurrer. That does not mean that this court is directly passing upon the ruling on the demurrer. It could not do that because there is as yet no final judgment and/or the court is not considering an *appeal* from a judgment. The proceeding is for a writ of mandate. This court in that proceeding must consider not only the basis for ruling on the demurrer as a reason for irrelevancy, but also, any other possibility in the whole case which bears upon the materiality of the questions propounded. The foregoing is clearly the holding of *Goytan* v. *Deasy,* 85 Cal.App. 454 [259 P. 488]. There the witness refused to answer the questions and the trial court refused to compel him to do so. In a mandamus proceeding against the trial court, the petitioners were denied relief, the court stating at page 455:

"We have given careful consideration to the import of the questions petitioners seek to have said defendant answer and are of the opinion that as to most of them said defendant was entitled to rely upon the privilege claimed by him that his answer thereto may tend to incriminate him in the courts of this state; *the remaining questions, we think, relate to immaterial matters. We conclude, therefore, that for the reasons stated respondent was without legal power to compel said*

*defendant to answer said questions, and consequently the application for the writ herein must be denied.''* (Emphasis added.) The rule as to the scope of the court's inquiry is stated in *Bennett* v. *Strodtman,* (Mo.App.) 42 S.W.2d 43, 45:

"Undoubtedly the general rule is that it is not for the witness or his counsel to be the judge of what is relevant and material in the course of the former's examination, that it is his business to answer the questions propounded to him unless they invade his personal privilege as a witness, and that the question of the relevancy or propriety of the examination is for the special commissioner to determine in the first instance under the power vested in him by section 1759, Rev. St. 1929, and for the court itself ultimately to pass upon, if and when the deposition is sought to be made use of at the trial . . .

"Of course there is the exception that, if the testimony desired could in no possible or conceivable event or contingency be read as evidence at the trial, or that if it be made clearly to appear that the testimony is sought to perpetrate a wrong, or to abuse the process of the court or the officer, or for what is obviously an unjustifiable purpose, then the witness may lawfully be protected in his refusal to answer, and the officer will not be sustained in his order of commitment for contempt." (See also 6 Ann.Cas. 577; 26 C.J.S. Depositions, § 65[a].)

In my opinion the writ should issue commanding the trial court to make an order directing the plaintiff to answer the questions propounded and any other questions which may be relevant to any possible issue in the case.