[Civ. No. 4652. Fifth Dist. May 30, 1979.]

LOUIS JONON et al., Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
CAROL CHRISTENSEN, Real Party in Interest.

686

## Counsel

Clifford, Jenkins & Brown and Patrick J. Osborn for Petitioners.

No appearance for Respondent.

Ralph B. Jordan, County Counsel, and Carol D. Brown, Deputy County Counsel, for Real Party in Interest.

## Opinion

**BEST, J.***—Petitioners, defendants in a wrongful death action, seek relief by extraordinary writ after respondent court denied their motion to compel real party, Carol Christensen, to answer questions propounded at

---

*Assigned by the Chairperson of the Judicial Council.

her oral deposition. For the reasons hereinafter stated we have concluded Welfare and Institutions Code section 10850, upon which real party based her refusal to answer, does not prohibit disclosure of the information sought by petitioners. Petitioners are therefore entitled to relief by prerogative writ. (*McClatchy Newspapers* v. *Superior Court* (1945) 26 Cal.2d 386, 392 [159 P.2d 944].)

### STATEMENT OF THE FACTS

On February 15, 1978, a complaint was filed against petitioners as defendants. The complaint alleged that petitioners supplied Elizabeth A., mother of plaintiff, with a quantity of pesticide and a machine to dispense that pesticide on premises owned by petitioners and rented to a friend of plaintiff's mother's. Plaintiff's complaint further alleges that petitioners failed to properly warn and instruct plaintiff's mother in the use of the pesticide, such failures resulting in her death from exposure to toxic agents in said pesticide.

In conducting discovery, attorneys for petitioners learned that just prior to her death the deceased had engaged in a telephone conversation with real party in interest, Carol Christensen. The occurrence of the conversation was disclosed by a review of the testimony of Jacqueline Robinson, a friend of Elizabeth A.'s, who was present during the telephone conversation between the deceased and Carol Christensen and who was also present at the time of Elizabeth's demise. Said testimony was given at the coroner's inquest into the death of Elizabeth A.

Based on this discovery, the attorneys for petitioners noticed the deposition of Ms. Christensen for May 11, 1978, at 10 a.m. Ms. Christensen appeared for her deposition accompanied by Attorney Carol D. Brown, representing Ms. Christensen through the Kern County Counsel's office.

At the deposition, Ms. Christensen testified that she was a social worker in the Child Protective Services Division of the Kern County Welfare Department. Her duties involved receiving and acting on reports or calls from people requesting assistance. She refused to answer questions as to whether she was "familiar with" or was "personally acquainted with" Elizabeth A.[1] Her refusal was justified as being under Welfare and Institutions Code section 10850.

---

[1]The deposition transcript reveals that the questions asked actually concerned Alicia A. However, both in the respondent court and here all parties have proceeded as if the questions asked concerned Elizabeth A.

Petitioners brought a motion before the respondent court on June 30, 1978, to compel real party in interest to provide deposition testimony regarding any observations made by real party during the phone call of the physical mannerisms of the deceased. Oral arguments were conducted.

The respondent court denied the motion on September 28, 1978.

## DISCUSSION

Real party contends that mandamus should not issue in this case because it would "compel the performance of acts which are illegal, contrary to public policy . . . [and which] will work injustice, introduce confusion . . . [and] not promote substantial justice."

Real party's contention presumes that the information sought to be discovered is privileged under Welfare and Institutions Code section 10850. That is, only if this court resolved the merits of this action in real party's favor would mandamus relief bring about the result she envisions.

The actual issue which real party tries to raise is whether mandamus relief is an appropriate remedy to compel discovery prior to trial.

Initially it should be noted that this court resolved this issue when it issued the order to show cause. (Cf. *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

Mandamus has long been recognized as being an appropriate remedy to secure enforcement of a litigant's statutory right to take depositions. "The language of section 2021 of the Code of Civil Procedure providing that 'The testimony of a witness . . . may be taken by deposition' confers upon litigants the *right* to take depositions." (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d at p. 393 [159 P.2d 944].) Where such rights are infringed "an appeal from a final judgment is neither speedy nor adequate where a trial court improperly refuses to order that a deposition be taken." (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d at p. 392; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 87, pp. 3861-3862.)

Despite this general rule, writs will not issue merely because a discovery order is erroneous. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 169-170 [84 Cal.Rptr. 718, 465 P.2d 854].) "[W]rits

should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].)

■ It appears that the issue in this case as to whether the privilege under Welfare and Institutions Code section 10850 (hereinafter, section 10850) is applicable to observations of physical manifestations is one of first impression. Furthermore, defining the scope of that privilege would be of general importance to courts and the bar. This is especially true because administrative regulations have been promulgated on a statewide basis which interpret the section 10850 privilege much broader than the language of the statute would permit. Those regulations make anything known to the welfare department privileged. (See *post,* fn. 5.) The usurpation of such a privilege and its exercise by local agencies clearly warrants judicial intervention.

At her deposition, real party refused to reveal whether she was "familiar" or "personally acquainted" with decedent, Elizabeth A., or to disclose any information concerning that individual. Petitioners' motion to compel real party to answer questions was denied on the ground that the information was privileged under Welfare and Institutions Code section 10850. Petitioner seeks a writ directing real party to answer questions "pertaining to the nature and manner in which the deceased, Elizabeth A., spoke during the subject telephone conversation. . . ."

■ Generally, in the absence of a statute creating a privilege, information may not be deliberately withheld from being disclosed pursuant to discovery procedures. (Evid. Code, § 911.)[2]

---

[2]Evidence Code section 911 provides: "Except as otherwise provided by statute:

"(a) No person has a privilege to refuse to be a witness.

"(b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing.

"(c) No person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any writing, object, or other thing."

If the information sought by petitioners would have been privileged at trial it is not subject to discovery. (Code Civ. Proc., § 2016, subd. (b).) Code of Civil Procedure section 2016, subdivision (b) provides in part that "[a]ll matters which are privileged against disclosure upon the trial under the law of this state are privileged against disclosure through any discovery procedure."

Evidence Code section 1040, subdivision (b) (1), makes the statutory privilege codified in Welfare and Institutions Code section 10850 applicable to real party at trial.

Therefore, the privilege in section 10850 is applicable to discovery procedures.

■ It should be noted initially that section 10850 does not, of itself, create a privilege. It merely prohibits disclosure of certain confidential information pertaining to applicants for or recipients of public social services. However, Evidence Code section 1040, subdivision (b)(1), provides:

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; . . ." Therefore, when reference is made in this opinion to the privileges provided or created by section 10850 it is in this context.

■ The sole issue in this case is whether observations of physical manifestations are the type of information which falls within the category of information made confidential by section 10850.

Section 10850, subdivision. (a),[3] provides that two types of information are confidential. The first category applies to ". . . all applications and records concerning any individual made or kept by any public officer . . . in connection with the administration of . . . any form of public social services. . . ."

The second category of confidential information prohibits the "disclosure of any information which identifies by name or address any applicant for or recipient of [any form of public social services] to any committee or legislative body."

---

[3]Welfare and Institutions Code section 10850, subdivision (a), provides: "(a) Except as otherwise provided in this section, *all applications and records concerning any individual made or kept* by any public officer or agency *in connection with the administration* of any provision of this code relating to *any form of public social services* for which grants-in-aid are received by this state from the United States government *shall be confidential,* and shall not be open to examination for any purpose not directly connected with the administration of such program, or any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such program. *The disclosure of any information which identifies by name or address any applicant for or recipient of such grants-in-aid to any committee or legislative body is prohibited,* except as provided in subdivision (b)." (Italics added.)

Welfare and Institutions Code section 10850, subdivision (b), provides for a third category which includes "any list of persons receiving public social services."[4]

■ It is clear that observations of physical characteristics do not constitute "applications and records" or a "list of persons" so as to come within the first or third categories of confidential information in section 10850. Such categories include only the agency's files and the information contained in them. (Welf. & Inst. Code, § 10850; cf. Gov. Code, § 6252 ["public records" are defined as writings]; *Los Angeles Police Dept.* v. *Superior Court* (1977) 65 Cal.App.3d 661, 668 [135 Cal.Rptr. 575].)

The second category of confidential information created by section 10850 is also inapplicable to this case. Under the terms of the statute this prohibition only applies to disclosures to a "committee or legislative body." The disclosure in this case would be to a judicial court.

---

[4]Welfare and Institutions Code section 10850, subdivision (b), provides:

"(b) Except as otherwise provided in this section, *no person shall publish or disclose or permit or cause to be published or disclosed any list of persons receiving public social services.* Any county welfare department in this state may release lists of applicants for, or recipients of, public social services, to any other county welfare department or the State Department of Social Services or the State Department of Health Services, and such lists or any other records shall be released when requested by any county welfare department or the State Department of Social Services or the State Department of Health Services. Such lists or other records shall only be used for purposes directly connected with the administration of public social services. Except for such purposes, *no person shall publish, disclose, or use or permit or cause to be published, disclosed, or used any confidential information pertaining to an applicant or recipient.*

"Any county welfare department, the State Department of Social Services, or the State Department of Health Services may provide the Joint Legislative Audit Committee with access to records of the disbursement of funds or payments, including lists of names of applicants and recipients, under Titles I, IV-A, X, XIV, or XVI of the Social Security Act, and such records shall be released when requested by the committee. The Joint Legislative Audit Committee may use information from such records only for the purpose of investigating the administration of public social services under such titles and reporting the results of any such investigation to the Legislature, and shall not use such information for commercial or political purposes. In any case where disclosure is authorized under this paragraph, the Joint Legislative Audit Committee shall not disclose the identity of any applicant or recipient, except in the case of a criminal or civil proceeding conducted in connection with the administration of public social services.

"However, this section shall not prohibit the furnishing of such information to other public agencies to the extent required for verifying eligibility or for other purposes directly connected with the administration of public social services, or to county superintendents of schools or superintendents of school districts only as necessary for the administration of federally assisted programs providing assistance in cash or in-kind or services directly to individuals on the basis of need. *Any person knowingly and intentionally violating the provisions of this subdivision is guilty of a misdemeanor.*" (Italics added.)

Real party's refusal to disclose the information at issue is not privileged under categories 1, 2 or 3.

█ Subdivision (b) of section 10850 provides in the last sentence of the first paragraph: "Except for such purposes, no person shall publish, disclose, or use or permit or cause to be published, disclosed, or used any *confidential* information pertaining to an applicant or recipient." (Italics added.)

The substance of real party's position is that thereby a fourth category of privileged information was created, and further, that the above quoted provision should be construed to apply to *any information* pertaining to an applicant or recipient. To adopt the interpretation urged by real party would result in an absolute privilege which would compel any public social service agency to refuse to disclose any information pertaining to an applicant or recipient. For example, even if such applicant or recipient were the party seeking information of the type here under consideration, real party would be prohibited from disclosing that information █ We do not believe the Legislature so intended.

By use of the term "any confidential information" it is clear that the Legislature intended to prohibit disclosure of only such information as was otherwise made confidential by other provisions of section 10850. Such an interpretation is consistent with the rule that the scope of a privilege is to be narrowly construed. (*Sullivan* v. *Superior Court* (1972) 29 Cal.App.3d 64, 72 [105 Cal.Rptr. 241].) Therefore, only that information which comes within one of the three categories described above is made confidential by the statute. Evidence consisting of a witness' observations of another person's manner of speaking or other physical manifestations does not constitute confidential information within the purview of section 10850 and such information is therefore not subject to the prohibition against disclosure.

Even if we were to accept that a fourth category of confidential information existed, it would not encompass the information sought by petitioners. █ For information to be "confidential" as that term is usually interpreted would require an intent on the part of decedent that it be confidential. The existence of such an intent is inconsistent with the presence during the phone conversation of a third party—Jackie Robinson—who was not shown to be there to aid in the rendition of welfare benefits. The only reasonable inference from the record is that the conversation was not intended by the decedent to be confidential.

■ Real party contends that the disclosure of any information acquired by a welfare worker might tend to disclose the welfare status of a recipient or applicant. It seems clear to us that the legislative purpose embodied in section 10850 was to prohibit disclosure of the identity of an applicant for or recipient of public social services to any person or agency other than those specified, and to permit disclosure to the specified entities only for the purposes specified in the statute. Nevertheless, observations of the vocal or other physical manifestations of a speaker do not, considered by themselves, reveal what the welfare status of that individual is. The only way the welfare status of Elizabeth might be inferred is if such observations were considered in conjunction with other information. However, it is apparent from the neutral character of physical manifestations that such "other information" must itself create the inference that welfare services were being administered to Elizabeth at the time the observations were made. The privilege under section 10850 is more applicable to that "other information" than to the information at issue. If the "other information" is determined by the court to be privileged no impermissible inference could be drawn. The court can also apply less drastic measures to prevent such inferences from arising. For example, trial courts have broad powers to fashion, upon request, protective orders which, according to the circumstances of a particular case, will comport with the legislative purpose as stated above and the rights of litigants to discover information which may be relevant or lead to relevant evidence. Therefore, we reject real party's contention.

Real party relies on *Sinacore* v. *Superior Court* (1978) 81 Cal.App.3d 223 [146 Cal.Rptr. 302]. However, *Sinacore* is distinguishable on its facts in that the information sought to be discovered consisted of the actual records and files of the welfare agency. Therefore, the information at issue in *Sinacore* clearly fell within the first category enunciated in section 10850.

Real party cites administrative regulations which, in essence, state that all information received by a welfare agency is privileged.[5] Section 10850 expressly provides that such regulations may be promulgated. ■ It is true that the interpretation of a statute by the agency responsible for its enforcement is entitled to deference in construing the terms of the statute. ■ Nevertheless, as discussed *ante*, section 10850 does not

---

[5]See, for example, State Department of Social Welfare, Manual of Policies and Procedures: Eligibility and Assistance Standards, section 48-007: "Names, addresses and all information concerning the condition or circumstances of any persons from whom or about whom information is obtained is confidential."

apply to prohibit disclosure unless the information sought to be discovered itself identifies an individual as an applicant or a recipient or is contained in welfare records. ▮ It would follow that the department's interpretation in its regulation of the terms of the statute is overbroad.

Real party argues that the relief requested by petitioners would result in subjecting her to criminal prosecution under section 10850. That section does provide in subdivision (b) that: "Any person knowingly and intentionally violating the provisions of this subdivision is guilty of a misdemeanor." Subdivision (b) of section 10850 prohibits the disclosure of "any list of persons receiving public social services" and "any confidential information pertaining to an applicant or recipient." ▮ The information at issue does not constitute confidential information under that section. Therefore, real party's contention is meritless.

Real party contends that the relief requested by petitioner would jeopardize federal funding of state welfare programs. It is true that section 10850 was enacted to comply with prerequisites set by the federal government for federal assistance. (Cf. *In re Jeannie Q.* (1973) 32 Cal.App.3d 288, 297-298 [107 Cal.Rptr. 646].) Federal statutes require that the state must make provisions for restricting the disclosure of information concerning applicants or recipients of public services. (42 U.S.C. § 602(a)(9).)[6] Nevertheless, it would appear to be a legislative function to enact legislation complying with the federal requirements. The Legislature has done so in this case and the only issue before this court is construing those provisions according to their terms. It is not the function of this court to redraft section 10850 to bring it in line with the federal restrictions. In any event, it is not clear that our construction of section 10850 fails to comply with those federal regulations.

Finally, real party contends that the disclosure of the information requested by petitioners would violate the right of privacy of decedent and her child (plaintiff in the suit below). Assuming, arguendo, that real party has standing to raise this issue, our discussion above demonstrates

[6]42 United States Code section 602(a)(9) provides: "(a) A state plan for aid and services to needy families with children must . . . (9) provide safeguards which restrict the use of [or] disclosure of information concerning applicants or recipients to purposes directly connected with (A) the administration of the plan . . . (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program, and (C) the administration of any other Federal or federally assisted program which provides assistance, or cash or in kind, or services, directly to individuals on the basis of need; and the safeguards so provided shall prohibit disclosure to any committee or a legislative body, of any information which identifies by name or address any such applicant or recipient: . . ."

that no right of privacy attached to the information here sought to be discovered. Furthermore, Jacqueline Robinson was present at the time the telephone call was made and heard what was said by the decedent. The communication was obviously not intended to be private.

█ Let a writ of mandate issue to compel respondent court to set aside its order denying petitioners' motion to compel witness to answer deposition questions, and to enter an order granting said motion on such conditions that respondent court deems proper in light of the views expressed herein.

Franson, Acting P. J., and Hopper, J., concurred.

A petition for a rehearing was denied June 22, 1979, and on June 22 and 27, 1979, the opinion was modified to read as printed above. The petition of the real party in interest for a hearing by the Supreme Court was denied August 8, 1979.