[L. A. No. 21542.   In Bank.   Dec. 6, 1950.]

J. S. STRAUSS, Petitioner, v. THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES, Respondent.

George I. Devor for Petitioner.

Harold W. Kennedy, County Counsel, Douglas DeCoster and William E. Lamoreaux, Deputy County Counsel, for Respondent.

Loeb & Loeb and H. F. Birnbaum for Real Party in Interest.

Morrison, Hohfeld, Foerster, Shuman & Clark, Samuel B. Stewart, Jr., and G. D. Schilling as Amici Curiae on behalf of Respondent and Real Party in Interest.

SPENCE, J.—This is a petition for a writ of mandate to compel respondent court to vacate its order quashing a subpoena duces tecum theretofore issued in a proceeding to perpetuate testimony under section 2084 of the Code of Civil Procedure. The points in controversy are these: (1) the sufficiency of petitioner's pleading of the foundational premise for his demand for the production of the desired documentary evidence; and (2) the definiteness in scope of the subpoena duces tecum itself in relation to the constitutional protection against unreasonable search and seizure. (Const., art. I, § 19.) A review of the record sustains petitioner's position as to the impropriety of respondent court's ruling in denial of his right to proceed with the perpetuation of the designated testimony and the examination of the specified documents. Accordingly, he is entitled to the writ here sought. (*Demaree* v. *Superior Court,* 10 Cal.2d 99 [73 P.2d 605]; *McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386 [159 P.2d 944]; *Brown* v. *Superior Court,* 34 Cal.2d 559 [212 P.2d 878].)

From the record herein, it appears that Union Bank and Trust Company of Los Angeles is cotrustee under a trust indenture dated December 1, 1934, securing an issue of sinking fund bonds. The bank accumulated $102,806.76 in the trust estate to retire the bonds. By the terms of the trust, the bank could so proceed through purchase of outstanding bonds on the open market or on tender from bondholders. In response to request petitioner, among others, tendered bonds for payment. The bank refused all tenders because it determined that sufficient bonds could be bought on the open market for less than the tendered prices.

Petitioner then sought to take the testimony of the bank and one of its officers, A. L. Lathrop, allegedly "in immediate charge of the administration of the trust indenture." In his

398

petition he alleges that he expects to be a party, the plaintiff, to an action to be filed in respondent court and to name the bank "as the or a party-defendant." Then follows a general outline of the facts expected to be proved in relation to the administration of the trust indenture: (1) its execution as of the date aforesaid, with Consolidated Office Buildings Company identified as the debtor company, one Leigh M. Battson designated as trustee, and the bank as cotrustee; (2) the provisions of the trust authorizing the cotrustee's use of available funds for the retirement of the bonds of the company and specifying that "the co-trustee shall not accept any tenders at any price or prices which in the opinion of the co-trustee shall be higher than the price at which bonds may be purchased at that time in the open market"; (3) the bank's call for tenders on June 30, 1949, including petitioner as one of the addressees, and setting July 18, 1949, as the date when "all tenders will be opened" and acceptance determined by the bank; (4) petitioner's tender of his bonds within the time allowed therefor by the bank; (5) the bank's rejection of all tenders as of July 27, 1949, after it had opened all tenders as scheduled on July 18, 1949, and disclosed the contents thereof "to a third person," which disclosure allegedly constituted "a breach of [its] fiduciary duties"; and (6) the claim that the "rejection . . . aforesaid was wrongful and without right."

Upon the presentation of this petition, an order was obtained for the examination of the bank and A. L. Lathrop; and at the same time, upon affidavit, a subpoena duces tecum was issued directing the bank to produce, at the scheduled deposition of its officer, all of the tenders which it had received under its call dated June 30, 1949. At the taking of the deposition of A. L. Lathrop as ordered, he as a bank officer refused to answer certain questions propounded to him and to produce the specified documents. The propriety of his action was then submitted to respondent court for determination, and the court made its order directing the witness to answer certain of the questions propounded but sustained the bank's objections to the production of the documents named in the subpoena duces tecum. Thereafter petitioner sought a second subpoena duces tecum upon the following averments by affidavit:

"Said Union Bank and Trust Company is the co-trustee under a certain trust indenture. Consolidated Office Buildings Company, a corporation, is the trustor thereunder. Peti-

tioner is the holder of numerous bonds issued under the terms of said indenture and is, therefore, a beneficiary of said trust. As such trustee, said Union Bank and Trust Company has in its possession and maintains records showing: (1) The number of outstanding bonds; (2) Bonds acquired by purchase, or otherwise; (3) Dates of acquisition of bonds; (4) Prices paid for bonds; (5) From whom said bonds were purchased; and (6) Disbursements for counsel and other fees and charges."

The affidavit then makes reference to the petition to perpetuate testimony as "incorporated" therein and as setting forth, among other things, these matters: "(1) a certain invitation for tenders of bonds made by the co-trustee; (2) the making of said tenders by various persons, including petitioner; (3) the rejection of said tenders by the said co-trustee; and (4) that said rejection by said co-trustee was wrongful and without right." The affidavit then continues: "Whether the said rejection was wrongful and without right depends, among other things, upon (a) the terms of the trust indenture, and (b) the prices paid for the bonds, plus all additional costs and expenses in acquiring them. The records of the said co-trustee in its possession and above-described are, therefore, competent and admissible evidence material to the issues."

Additional charges are also made by the affidavit wherein it is claimed that "unknown to petitioner at the time he filed his said petition to perpetuate testimony was the fact that the said co-trustee had entered into a secret agreement . . . wherein and whereby the conduct of the said co-trustee was sought to be influenced"; that "the existence of said secret agreement, but not its terms, was discovered upon the taking of the deposition of the said A. L. Lathrop"; that said "secret agreement" called for the bank's refusal of all tenders from the bondholders under an arrangement with three "guarantors" whereby bonds could be acquired by the bank in the "open market" for prices less than those tendered by the bondholders. It is then averred that "petitioner desires to further interrogate the said A. L. Lathrop concerning the execution of said secret agreement . . . the acts and conduct of the [bank as] co-trustee subsequent to the date of execution of said agreement"; and particularly with regard to the "present status, past acts of management, the intent of the [bank] as to future operation, [as well as] other incidents of the operation of the trust."

Upon such affidavit petitioner procured the issuance of a second subpoena duces tecum calling for "all books, documents and records relating to the creation, existence and administration" of the trust. Thereafter motion was made for the quashing of this subpoena as being improvidently issued, and as also violative of the constitutional protection against unreasonable searches and seizures. In opposition to such motion and in support of the premise for the issuance of the subpoena in question, a counteraffidavit was filed on behalf of petitioner, wherein it is averred that one of the "guarantors" under the alleged secret agreement was "president" of the trustor company, and that "vitally" concerning the petitioner was the matter of whether the arrangement for the purchase of the bonds on the "open market" involved the payment of a broker's commission and attorney fees from the sinking fund in an amount which made the total expense of acquiring the bonds on the "open market" in fact greater than it would have been if the bank had accepted the bondholders' tenders. Respondent court sustained the bank's objections to the propriety of the subpoena and ordered it to be quashed. The court also ruled, in pursuance of certain medical affidavits filed with respect to the proposed examination of A. L. Lathrop, that it would be detrimental to his health to testify. Petitioner does not seriously challenge the premise of this latter ruling, but he does seek, by writ of mandate, to have vacated the order of respondent court quashing the second subpoena duces tecum above mentioned as it relates to the demand upon the bank for the production of the designated documentary evidence.

The petition to perpetuate testimony indisputably constitutes a literal compliance with subdivisions (1) and (3) of section 2084 of the Code of Civil Procedure, with petitioner setting forth (1) the reason for the perpetuation of the testimony, that is, that he expects to be a party to an action; (2) the names of the witnesses to be examined and their places of residence; and (3) a general outline of the facts expected to be proved. It is conceded that "ordinarily nothing more than the statutory requirements is necessary to be shown in the application and the courts of this state have so stated on several occasions" (*Kutner-Goldstein Co.* v. *Superior Court,* 212 Cal. 341, 345 [298 P. 1001], and cases cited); but it is argued that when the order for examination of the proposed witness extends beyond the taking of his deposition through questions and answers and directs his *production of documentary evidence,* there must be a showing as to "the nature

of the anticipated controversy and that the facts expected to be proved would be material to the contemplated action'' in order that the constitutional right of ''protection against unreasonable searches and seizures'' may be observed. (*Ibid.*, p. 346; also *Irving* v. *Superior Court,* 79 Cal.App. 361, 365-366 [249 P. 236].) However, in resolving the problem thus presented as to the sufficiency of petitioner's showing in the light of these rules, there must be considered the precise nature of his theory of relief.

It is apparent from petitioner's pleading that he correlates his cause for judicial redress with the duties and obligations assumed by a trustee in accounting for the administration of a trust. Thus he expressly avers that he, as a bondholder pursuant to the terms of the trust indenture, is a beneficiary under a trust, and that material to the protection of his rights are the corporate records pertaining to the cotrustee's management of the sinking fund. He argues the possibility of the breach of a trust upon this alleged sequence of events: the bank's disclosure of the contents of the bondholders' tenders to the president of the trustor company and two other persons, in violation of the terms of the trust indenture; the ensuing action of these three persons as ''guarantors'' to cause the bank to reject all such tenders pursuant to an undertaking to provide the banks with bonds purchasable on the ''open market''; and the bank's payment of certain brokerage commissions and attorney fees as expenses in connection with such bond purchases. Accordingly, he maintains that the source of payment for these latter items ''vitally'' concerns the propriety of his demand for relief because if they are charged against the trust and so cause the total cost of acquisition of the bonds on the ''open market'' to exceed the sum payable if the bank had accepted the bondholders' tenders without the additional cost items mentioned, then the rejection of the tenders was ''wrongful and without right'' under the terms of the trust indenture.

A trustee has the duty to the beneficiaries to give them upon their request at reasonable times complete and accurate information relative to the administration of the trust. (2 Scott on Trusts, § 173, p. 922; 4 Bogert on Trusts and Trustees, § 961, p. 233; *Bone* v. *Hayes,* 154 Cal. 759, 766-767 [99 P. 172]; *Kinert* v. *Wright,* 81 Cal.App.2d 919, 924-926 [185 P.2d 364]; *Baydrop* v. *Second Nat. Bank,* 120 Conn. 322 [180 A. 469, 472]; *In re Wheeler's Estate,* 287 Pa. 416 [135 A. 252, 253]; *Equitable Trust Co.* v. *Schwebel,* 32 F.Supp. 241, 243.) In line with such consideration is

the rule that the trustee's records as to the administration of the trust are deemed a part of the trust estate, and the right of the beneficiaries to an inspection of them stems from their common interest in the property along with the trustee. (27 C.J.S. § 71(2), p. 106; *McGeary* v. *Brown,* 23 S.D. 573 [122 N.W. 605, 607-608]; *Wood* v. *Honeyman,* 178 Ore. 484 [169 P.2d 131, 162-163, 171 A.L.R. 587].) ▌ So here petitioner, because of his special interest as a beneficiary of the trust in the bank's corporate records pertaining to its management of the sinking fund, properly seeks to enforce his right of inspection. (*Union Trust Co. of San Diego* v. *Superior Court,* 11 Cal.2d 449, 460 [81 P.2d 150, 118 A.L.R. 259]; *Austin* v. *Turrentine,* 30 Cal.App.2d 750, 762 [87 P.2d 72, 88 P.2d 178].) The same legal principle has been applied in the case of a prima facie showing of a right to an accounting where the relationship of "joint adventurers" was correlated with the duties and obligations of "partners" in making a full disclosure as to matters affecting their undertaking together. (*Milton Kauffman, Inc.* v. *Superior Court,* 94 Cal.App.2d 8, 17 [210 P.2d 88].) While in the cited cases the right to an accounting between the parties was recognized in connection with the materiality of evidence in already instituted litigation (Code Civ. Proc., § 1000), the same basic principle of relationship between the parties should apply in support of a similar right asserted for the purpose of determining whether there has been a breach of a fiduciary duty as the premise of contemplated litigation. Petitioner has not merely alleged as a "legal conclusion" that the bank's rejection of the bondholders' tenders was "wrongful and without right" (*cf. Burlingame* v. *Traeger,* 101 Cal. App. 365, 368 [281 P. 1051]), but he has related that charge to a chronology of facts which "vitally" concerns his right to receive the advantages and benefits which the trust was intended to provide, and plainly reflects the nature of the anticipated controversy between the parties.

In a supplemental brief filed after hearing was granted by this court, it is suggested for the first time that "the relationship of the trustee under a bond indenture and the bondholders is not that of trustee and cestuis que trustent." This broad declaration finds little, if any, support in the cited cases or texts, most of which discuss the problem of the effect of exculpatory clauses in trust indentures which purport to relieve the trustees of certain duties and obligations which the law otherwise imposes upon them. It is not suggested, however, that any such exculpatory clause is contained in the trust indenture here, and in the absence thereof, it seems clear that

the parties stood in the ordinary relationship of trustee and beneficiary. Accordingly, petitioner, as beneficiary, was entitled to the rights which are incident to the fiduciary relationship, including the right of inspection of the trustee's records.

■ Nor is the subpoena duces tecum here involved vulnerable to the objection that it is too broad in scope because it calls for "*all* books, documents and records" pertaining to the trust. It is true that its demand for documentary evidence spans a period of almost fifteen years—commencing with the creation of the trust on December 1, 1934, and extending to the circumstances surrounding the rejection of the bondholders' tenders in July, 1949—and the claim is made that such demand as so unlimited does not identify with sufficient exactitude evidence having any material bearing on the principal issue in controversy, which relates to the bank's right to reject the tenders in question. So cited is the rule stated in *McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, at page 396, as follows: "A party or a witness has a constitutional right to be free from unreasonable searches and seizures, and it is therefore incumbent upon the one seeking an inspection to show clearly that he has a right thereto and that the constitutional guaranties will not be infringed." But petitioner's asserted right of inspection must be determined on the basis of whether the proposed search and seizure would be *un*reasonable, and when so considered it does not appear to run counter to the cited rule. ■ As hereinbefore noted, the parties to the contemplated litigation stand in the relation of trustee and beneficiary respectively, one to the other, and when such a situation appears, the ordinary strictness of the rule relating to the right of inspection is greatly relaxed consistent with the "common interest" that the parties have in all books and records with relation to the trust. (*Union Trust Co. of San Diego* v. *Superior Court, supra,* 11 Cal.2d 449, 460-462.) Under the circumstances, petitioner's description of the desired documentary evidence is sufficient to apprise the custodian thereof, the bank, as to what he deems requisite for a proper accounting of its administration of the trust (*ibid.,* p. 458), and the fact that the bank may find it inconvenient or troublesome to produce "voluminous records" will not defeat petitioner's right of inspection. (27 C.J.S. § 79, p. 116; *Milton Kauffman, Inc.* v. *Superior Court, supra,* 94 Cal.App. 2d 8, 19.) The precise factual considerations outlined by petitioner as stemming from the existence of the stated trust relationship between the parties distinguish this situation from cases where no such relationship was involved (*Kutner-Gold-*

*stein Co.* v. *Superior Court, supra,* 212 Cal. 341; *Irving* v. *Superior Court, supra,* 79 Cal.App. 361), and likewise establishes as not in point cases where a so-called "omnibus subpoena" has been disapproved. (*Paladini* v. *Superior Court,* 178 Cal. 369, 374-375 [173 P. 588]; *Nelson* v. *Superior Court,* 9 Cal.2d 729, 732 [73 P.2d 232]; *Kullman, Salz & Co.* v. *Superior Court,* 15 Cal.App. 276, 285-286 [114 P. 589]; *Shell Oil Co.* v. *Superior Court,* 109 Cal.App. 75, 80-81 [292 P. 531]; *People* v. *Keith Railway Equipment Co.,* 70 Cal.App.2d 339, 361 [161 P.2d 244].)

Let the peremptory writ of mandate issue as prayed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

EDMONDS, J.—By the decision in this case, a beneficiary of a trust may require the trustee to bring into court all of its records and documents, perhaps voluminous, and covering many years of administration, upon the allegation that a single transaction was "wrongful" and pursuant to a "secret agreement." This rule is much broader than is necessary to protect the interests of beneficiaries. Under fundamental equitable principles, courts should require the right to make records of a trustee available for examination to be reasonably exercised and limit the use of them for specific purposes.

"The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust." (Rest., Trusts, § 173.) However, this does not mean that the existence of the trust relationship renders *any* proposed search and seizure reasonable. The beneficiary has the right to inspect the records of the trust at the office of the trustee, and may also require the trustee to give information concerning the administration of the trust. But he should not be permitted to compel the trustee to bring "all books, documents and records relating to the creation, existence and administration" of the trust into court until he has made some showing that they are relevant and material to the subject matter of the litigation.

The anticipated controversy for which Strauss desires the records of the trust concerns the alleged wrongful conduct of the cotrustee in rejecting his tender of bonds, which was assertedly done pursuant to some secret agreement. Un-

questionably he is entitled to the production of all tenders which the trustee received and the records indicating the action taken upon them. But it does not follow that his demand for *all* documents covering the period for 15 years prior to the tender made by Strauss is justified or reasonable.

The materiality of the all-inclusive data is not stated with any exactitude. Perhaps it will become evident at a later stage of the proceedings. If so, production of particular documents of a general class may and should then be compelled. On the other hand, the data relating to the rejection of the tender made by Strauss may indicate the immateriality of the other unspecified documents which he demands. As a general rule, a subpoena should be limited, in the first instance, to the records directly bearing upon the principal issue of the proposed action, and a beneficiary should not be allowed to compel the production of "all books, documents and records" of the trust relating to matters which are not shown with any particularity to be presently material.

The rule of the majority opinion is one which is subject to great abuse. It opens the way to vexatiousness and harassing actions which underlie the objections to the "omnibus subpoena" criticized in such cases as *Nelson* v. *Superior Court,* 9 Cal.2d 729, 732 [73 P.2d 232], and *Shell Oil Co.* v. *Superior Court,* 109 Cal.App. 75, 80-81 [292 P. 531]. The existence of a trust relationship is not sufficient to excuse the petitioner from showing ". . . clearly that he has a right thereto and that the constitutional guaranties [against search and seizure] will not be infringed. Hence the affidavit in support of the demand for inspection must identify the desired books, papers and documents and it must clearly show that they contain competent and admissible evidence which is material to the issues to be tried. The affiant cannot rely merely upon the legal conclusion, stated in general terms, that the desired documentary evidence is relevant and material." (*McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386, 396 [159 P.2d 944].) Any relaxation of these rules ". . . does not mean an abolition of the requirements that the papers be identified and that they be shown to be relevant and material." (*Ibid.* at p. 397.)

For these reasons, I would deny the writ of mandate.

Schauer, J., concurred.

Respondent's petition for a rehearing was denied January 4, 1951. Edmonds, J., and Schauer, J., voted for a rehearing.