**Electronically Filed
Supreme Court
SCWC-12-0000731
15-JUN-2017
09:08 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

TRUST CREATED UNDER THE WILL OF SAMUEL M. DAMON, Deceased

_____

SCWC-12-0000731

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000731; P. NO. 6664; EQUITY NO. 2816-A)

JUNE 15, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This case concerns the objections of two beneficiaries, Christopher Damon Haig ("Christopher") and Myrna B. Murdoch ("Myrna"), of a testamentary trust created under the will of Samuel M. Damon ("Damon Trust" or "Trust"), to the decisions

made by the Probate Court of the First Circuit ("Probate Court")[1] that underpinned its August 2, 2012 Judgment, specifically the approval of the Trust's accounts from 1999 to 2003.  The Intermediate Court of Appeals ("ICA") affirmed the Probate Court's August 2, 2012 Judgment.  See In re Estate of Samuel M. Damon & Trust Created under the Will of Samuel M. Damon (In re Trust of Damon), No. CAAP-12-0000731 (App. June 2, 2016) (mem.).

Separately, Christopher and Myrna each timely applied for a writ of certiorari from the July 11, 2016 Judgment on Appeal entered by the ICA pursuant to its June 2, 2016 Memorandum Opinion ("Mem. Op.").  Among other things, both Christopher and Myrna assert that the Trustees violated their duty to inform beneficiaries pursuant to trust law and Hawaiʻi Revised Statutes § 560:7-303 (2006), that their due process rights were violated when they were not granted access to documents disclosed to the court-appointed Master by the Trustees of the Damon Trust ("Trustees") thereby preventing them from making informed objections to the Master's Report regarding the Trust's accounts from 1999-2003, and that the Trustees breached their fiduciary duty to keep full, accurate, and orderly records of the status

---

[1]  The Honorable Derrick H.M. Chan presided.

2

of the Trust's administration when certain documents went inexplicably missing.[2]

---

[2] Christopher's Application presents four questions:

> 1. Whether the ICA made grave errors of law in denying a beneficiary the right to review trust records at the time of account approval necessary to submit proper objections, where such denial is obviously inconsistent with Hawaii Supreme Court and federal court decisions.
>
> 2. Whether the ICA made grave errors of law by denying a beneficiary's rights to constitutional procedural due process in holding secret, ex parte proceedings between the Master and Trustees, and whether this denial is obviously inconsistent with Hawaii Supreme Court and federal court decisions stating that it is unconstitutional to prejudge a case before giving a party reasonable access to the information and an opportunity to present his case.
>
> 3. Whether the ICA made grave errors of law when it ignored a beneficiary's claim for breach of fiduciary duties relating to the trustees' loss of books and records for the Trust.
>
> 4. Whether the ICA made grave errors of law in holding that a beneficiary waived all objections to the sale of Trust assets without a hearing where the Trustees failed to: (1) obtain prior court approval of the sale in violation of [HRS] § 554A-5; (2) disclose their personal self-interest in the transaction; and (3) follow their own conflicts of interest policy.

Myrna's Application presents three questions:

> [1]. Whether the ICA erred in affirming the probate court's decision that improperly rubber-stamped the Master's Report, refused to compel the Trustees to produce documents, and violated [Myrna's] constitutional right to due process.
>
> [2]. Whether the ICA erred by misapplying the presumption afforded to trustees under Campbell because the Trustees had no discretion whether to apply the statutory and common law duty to keep Myrna reasonably informed.
>
> [3]. Whether the CA [sic] erred in applying too restrictive a threshold to the claim that the Trustees committed spoliation, erred in applying the Campbell presumption to the issue of spoliation, and erred in affirming the probate court's decision in light of the spoliation.

For the reasons discussed, the ICA erred in affirming the Probate Court's approval and adoption of the Master's Report without first granting Christopher's and Myrna's requests to access Trust administration documents, contrary to the requirements of HRS § 560:7-303.

## II. Background

This probate case was previously heard by this court regarding a separate issue. See In re Estate of Damon, 119 Hawai'i 500, 199 P.3d 89 (2008) (holding that the court-appointed master was disqualified due to a conflict of interest and that objector-beneficiary's challenge to master's appointment was timely). Accordingly, some of the following factual and procedural background is repeated from that opinion.

## A. Factual Background

> On November 10, 1914, a testamentary trust was created by the Last Will and Testament of Samuel M. Damon ("Trust"). Samuel M. Damon died on July 1, 1924. During the 1999-2003 accounting period, the Trustees managed the Trust's assets with roughly half of its value in publicly traded securities and the other half in real estate. The securities portion of the Trust's assets consisted mostly of a 13% interest in BancWest Corporation common stock. The real estate portion of the Trust's assets consisted primarily of prime industrial and commercial lands in Honolulu under long-term leases, a sizeable cattle ranch on the island of Hawai'i, two walnut ranches located in California, and an industrial property located in California.
> In 2001, the Trust sold its entire 13% interest in BancWest Corporation common stock. In 2003, the Trust sold its prime industrial and commercial land in Honolulu, two walnut ranches, and a significant portion of real estate located on the island of Hawai'i. The net proceeds from these transactions has [sic] been reinvested into a diversified securities portfolio that is being advised and managed by Goldman, Sachs & Company.

4

In re Estate of Damon, 119 Hawai'i at 501–02, 199 P.3d at 90–91.

The Trust terminated on November 9, 2004 when the last measuring life, Samuel M. Damon's granddaughter, Joan Damon Haig, passed away. On termination, the Trust's estate was valued at $836 million. There is no dispute that Christopher and Myrna were beneficiaries of the Trust from 1999 to 2003.[3] According to counsel for the Trustees, Christopher's and Myrna's interests in the Trust total "slightly over three percent [3%]." Three percent of $836 million is approximately $25 million.

**B.    Procedural Background**

On April 30, 2004, the Trustees filed a "Petition for Approval of 1999, 2000, 2001, 2002 and 2003 Income and Principal Accounts" ("Petition") in Equity No. 2816-A and Probate No. 6664. The Petition represented that the Trustees

> sent annually to all adult beneficiaries who are entitled
> to income by the terms of the Will copies of their annual
> accounts for the calendar years 1999, 2000, 2001, 2002 and
> 2003, showing detailed expenditures of [sic] receipts and
> income and principal for these years, together with
> inventories as of the end of each year, and copies of
> Consolidated Financial Statements and Schedules of the
> Estate of S.M. Damon, and the Independent Auditor's Reports
> prepared by KPMG LLP, for each year.

(footnote omitted).

After the Probate Court's initially appointed master for the Petition was disqualified upon Christopher's objections, see In re Estate of Damon, 119 Hawai'i 500, 199 P.3d 89, the Trustees

---

[3]  Christopher is a son of Joan Damon Haig and the brother of one of the Trustees, David Haig ("David"). Myrna was previously married to David.

petitioned for another court-appointed master to examine the Estate's accounts.  Christopher objected to the Trustee's petition for the appointment of another master, and instead filed a "Petition for Assignment to Civil Trials Calendar of the First Circuit Court" ("First Assignment Petition") on February 11, 2010, asserting the following issues regarding the Trust's 1999-2003 accounts:

> 1.  Whether the trustees adequately managed the estates' [sic] securities portfolio[.]
> 2.  Whether the trustees obtained a satisfactory premium for the First Hawaiian Bank stock.
> 3.  Whether the trustees obtained fair market value for the real estate portfolio of the trust.
> 4.  Whether the trustees had conflicts of interest in the foregoing matters.

Myrna, pro se, appeared to join in Christopher's concern regarding the appointment of a new master and his request for the assignment of the case to the civil trials calendar.  The hearing for the First Assignment Petition was set for April 1, 2010, which fell after the date set for the court's hearing on the appointment of a new master.

At a hearing on February 18, 2010, the Probate Court granted the Trustee's petition for the appointment of a new master ("Master"), who was appointed by Order of Reference filed March 22, 2011.  In accord with Hawaiʻi Probate Rules ("HPR")

6

Rule 29,[4] that Order stated that "[t]he [Trustees] shall . . . make all books and records of the Damon Estate available to the Master."

The court held a hearing on the First Assignment Petition on April 1, 2010. After hearing argument from the parties, the court decided to continue the matter until the court had an opportunity to review the Master's Report.[5]

On October 7, 2011, the Probate Court received Christopher's "Petition to Renew Request for Assignment of Case to Circuit Court Pursuant to Probate Rule 20 or in the Alternative, for Appointment of a Discovery Master" ("Christopher's Renewed Assignment Petition"). On October 10, 2011, through counsel, Myrna similarly filed a "Petition for Assignment of Case to Circuit Court Pursuant to Probate Rule 20(a) through 20(c) or in the Alternative, for an Order Pursuant to Probate Rule 20(d) Compelling Discovery and Appointing a Discovery Master" ("Myrna's Assignment Petition"). Both Christopher's Renewed Assignment Petition and Myrna's Assignment Petition asserted that each had requested information from the Trustees regarding Trust administration, those requests were denied or ignored, and that when assistance was sought from the

___

[4] "The master shall have unlimited access to the books and records of the fiduciary with respect to the trust or estate that are not protected by privilege . . . ." HPR Rule 29.

[5] Court minutes reflect that "by agreement of counsel, [the First Assignment Petition] [wa]s continued until moved on in both [probate and equity] cases."

7

Master, the Master stated that she did not have the power to compel the Trustees to provide discovery and advised Myrna and Christopher to take up the issue with the Probate Court.

A hearing on Christopher's Renewed Assignment Petition and Myrna's Assignment Petition was held on December 1, 2011.  At the hearing, the Master indicated that the Report would not be completed until sometime in mid-February 2012 because deadlines for submissions were suspended pending the outcome of Christopher's and Myrna's petitions.  The Probate Court judge reminded the parties that the First Assignment Petition had been continued so that the Master's Report could be completed.  The court also indicated the parties would be better able to focus on discrete issues of concern after the Master's Report issued, which would limit the scope of any potential discovery.

Christopher explained that he filed the Renewed Assignment Petition because "[al]though the trustees provided information in the past, they have now refused."  Christopher and Myrna argued that they had a right as beneficiaries to the requested information, or, at the very least, information that was disclosed to the Master, and that they had already narrowed their objections.  In their memoranda, Christopher and Myrna each cited to HRS § 560:7-303, Bogert's on Trusts § 962 ("Duty

to Respond to Beneficiaries' Requests for Information"),[6] and the Restatement (Second) of Trusts § 173 ("Duty to Furnish Information"),[7] to show that the Trustees had a duty to provide them with the requested Trust documents and information. Moreover, because the Master's document review was in part based on the general objections already noted by Christopher and Myrna, they explained they would be unable to "submit . . . more meaningful objection[s]" to the Master if they did not get access to those very documents provided to the Master by the Trustees.  As an example, Christopher's memorandum cited his securities and real estate experts, who indicated "they cannot [issue] a report unless they have more information."  The Trustees countered that "[t]he Order of Reference by definition

---

[6]      **The Duty to Respond to Beneficiaries' Requests for Information**
      Generally, if a beneficiary of a trust requests information about the trust from the trustee, the trustee must promptly furnish it.  The duty to provide information about the trust property and its administration in response to a request from a beneficiary has long been recognized by the common law and has been codified in most jurisdictions. Although the duty is fundamental and widely if not universally recognized, it is subject to several limitations.  First, the duty extends only to information requests that are reasonable. . . .

Bogert's on Trusts § 962 (3d ed. 2010) (footnotes omitted).

[7]      **Duty to Furnish Information**
      The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

Restatement (Second) of Trusts § 173 (1959).

9

is an ex parte process.  We are required to meet with the Master, again, as the eyes and ears of the Court and provide her with access to the books and records.  We're doing that."

The Probate Court concluded that Christopher and Myrna failed to show that discovery was necessary prior to the completion of the Master's Report.  The court emphasized that Christopher's and Myrna's issues were preserved, and that they would be given an opportunity to respond to the Master's Report. Accordingly, the court denied their petitions.[8]

The Master's Report, concluding the Trust's 1999–2003 income and principal accounts should be approved, was filed on March 9, 2012.  In it, among other things, the Master noted the following:

> Your Master verified the accuracy and reliability of the Trust's financial accounts by examining the statements of assets and liabilities, income and expenses, and random examination of the 2003 receipts and invoices.  The 1999-2002 receipts and invoices were unlocatable and, according to Controller Mizuno, were probably destroyed as part of the Trust's regular document culling process.  Controller Mizuno assured the Master that he has seen and audited most of the 1999-2002 receipts and invoices when he was part of the KPMG LLP (hereinafter KPMG) audit team and approved some of the 2002 receipts and invoices when he was hired as the Estate's Controller in October 2002.  The 1999-2003 annual statements, which were mailed annually to all Beneficiaries, were created from the receipts and invoices. He also confirmed that the Trust's internal controls requiring at least three levels of approval, including those of the Trustees, were uniformly followed in all of the years in the 1999-2003 Accounts Period.
> The Damon Trust accounts are annually audited by KPMG who issued annual "Independent Auditors' Report" of its findings.  The audits process included, inter alia, random reviews of the receipts and invoices to confirm that

---

[8]  The record does not reflect whether the court ruled on the First Assignment Petition.

> internal controls, such as the approval process for all invoices, were in place and properly followed. KPMG's audits are attached to the 1999-2003 Accounts Petition.
>     Based on the examination of the financial statements, receipts, and KPMG's annual audits, your Master is satisfied that the Trust's 1999 - 2003 financial accounts as presented to the Probate Court are fair and accurate.

At a status conference on March 20, 2012, the court set the following deadlines: April 25, 2012 for responses or objections to the Master's Report; May 25, 2012 for any reply; June 21, 2012 for the hearing on the Trustee's Petition.

On April 17, 2012, Christopher submitted to the Probate Court a "Petition to Compel Production of Documents and Continue Deadline to Respond to Master's Report" ("Petition to Compel"), which was joined by Myrna. The Trustees objected to the Petition to Compel on numerous grounds, including that Myrna's requested documents were irrelevant to the Trustee's Petition, or were ones she already received from the Trustees or could have received from other sources. The Petition to Compel was set for a May 31, 2012 hearing.

Concurrent to submitting briefing on the Petition to Compel, both Myrna and Christopher timely submitted their objections to the Master's Report on April 25, 2012. Christopher maintained that although he submitted general objections to the Master's Report, he was unable to adequately and completely respond to the Master's Report because he was not provided with the documents he requested of the Trustees. On

May 25, 2012, the Master and Trustees filed their responses to these objections.[9]

At the May 31, 2012 hearing on the Petition to Compel, the Probate Court listened to the parties' arguments but made no additional inquiries or comments. The Probate Court ruled on the Petition to Compel by way of a minute order issued on June 19, 2012:

> After review of the record and pleadings herein, review of the Master's Report filed on March 9, 2012 and objections and responses thereto, and having considered the representations, arguments and objections made, the court hereby denies the Petition [to Compel].
> The court finds that there is no basis to compel the trustees to produce all the documents reviewed by the Master. The court also denies the Petitioner's request to transfer the matter to the civil trials calendar.
> Based on the foregoing, the court denies the request to continue the deadline for the beneficiaries to respond to the Master's Report.

(some capitalization omitted). The ruling was formalized in the Probate Court's July 6, 2012 "Order Denying Beneficiary Christopher Damon Haig's Petition to Compel Production of Documents and Continue Deadline to Respond to Master's Report, Filed April 18, 2012."

At the June 21, 2012 hearing regarding the Petition and the Master's Report, Christopher and Myrna primarily argued that the Petition should not be granted because they were not given an opportunity to review the underlying Trust documents examined by

---

[9]  Past the court-imposed deadline of May 25, 2012, the parties continued to file briefs. On June 8, 2012, Christopher filed supplemental objections, and Myrna filed a reply with the Master. On June 18, 2012, the Trustees responded to Christopher's and Myrna's June 8, 2012 filing.

the Master in her preparation of the Report so that they may better articulate objections.  They also requested an evidentiary hearing.  The Probate Court entered a minute order on July 3, 2012, stating:

> After review of the record and pleadings herein, review of the Master's Report filed on March 9, 2012 and objections and responses thereto, and having considered the representations, arguments and objections made, the court hereby grants the Petition, subject to the recommendations of the Master, which are approved and adopted.  The Master's fees are approved.

(some capitalization omitted).  The "Order Granting Petition for Approval of 1999, 2000, 2001, 2002 and 2003 Income and Principal Accounts" was filed on August 2, 2012.  Judgment was entered on August 2, 2012 as to that order in addition to the orders denying Christopher's Renewed Assignment Petition, Myrna's Assignment Petition, and Christopher's Petition to Compel to which Myrna had joined.[10]

## C.   Appeal to the ICA

Myrna and Christopher each timely filed a Notice of Appeal with the ICA indicating that they appealed the August 2, 2012 Judgment "and all orders, findings of fact, rulings and conclusions of law, either stated or subsumed therein which the

---

[10]   The judgment did not address any order that may have issued with respect to the First Assignment Petition.

Judgment made final."[11]  The ICA summarized Christopher's and Myrna's combined points of error as:

> [Christopher and Myrna contend] the probate court erred when it: (1) did not compel trustees David M. Haig, Paul Mullin Ganley, and Walter A. Dods, Jr. . . . to respond to requests for information or make documents available to Appellants; (2) adopted the "Petition for Approval of 1999, 2000, 2001, 2002 and 2003 Income and Principal Accounts" . . . without an independent review; (3) approved the Trustees' 1999-2003 Accounts Petition despite evidence of spoliation; (4) did not assign the case to the trial court docket; (5) denied [Christopher's] conflict of interest objections to the sale of BancWest Corporation . . . stock; and (6) denied [Christopher's objections to the sale of real estate assets.

In re Trust of Damon, mem. op. at 1–2 (footnote omitted).

The ICA began its analysis with "the well-settled principle that trustees benefit from a presumption of regularity and good faith."  In re Trust of Damon, mem. op. at 6 (citing In re Estate of Campbell, 42 Haw. 586, 607 (Haw. Terr. 1958)) (quotation omitted).  Hawai'i law "imposes upon the person questioning the trustee's action the burden of overcoming the presumption, but which requires the trustee ultimately to justify his action if sufficient evidence is produced to overcome the presumption."  Id. (citing In re Estate of Campbell, 42 Haw. at 607).

With respect to the first point of error, the ICA focused

---

[11]  As Christopher was the second party to file a "notice of appeal," he re-titled his Notice of Appeal as a Notice of Cross-Appeal, and subsequently re-filed it.  Myrna also filed a "Notice of Cross Appeal" on September 7, 2012, although it is unclear why she did so.

on the portion of HRS § 560:7-303[12] that states, "The trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration . . . ."  The ICA noted that Christopher and Myrna received annual accounts and audited financial statements for each year of the 1999-2003 accounting period, did not object to those documents at the time of receipt, and therefore were kept "reasonably informed," as noted in the Master's Report.  In re Trust of Damon, mem. op. at 8-9.

Moreover, the ICA noted that Christopher's and Myrna's repeated requests for a "large swath of information" from the Trustees did not point to specific reasons for the requested documents.  In re Trust of Damon, mem. op. at 9.  The ICA therefore concluded that Christopher and Myrna failed to meet their burden of overcoming the presumption of regularity and

---

[12]  The statute states in relevant part:

> **Duty to inform and account to beneficiaries.**  The trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration . . . .  In addition:
>
> . . . .
>
> (2)  Upon reasonable request, the trustee shall provide the beneficiary with a copy of the terms of the trust which describe or affect the beneficiary's interest and with information about the assets of the trust and the particulars relating to the administration.
>
> (3)  Upon reasonable request, a beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of the trustee.

HRS § 560:7-303.

15

good faith of the Trustees because they did not show what they would gain from the documents.  See id.  As such, the ICA concluded the Probate Court did not err when it denied Christopher's and Myrna's petitions to appoint a discovery master.  The ICA also appeared to have concluded that for these same reasons, the Probate Court did not err when it denied the Petition to Compel, nor were Christopher and Myrna deprived of their due process rights when they were not granted access to the same information made available to the Master.  See id.

Relatedly, as to the fourth point of error, the ICA concluded that the Probate Court did not err when it retained the case on the probate calendar and denied the Petition to Compel.  Pursuant to HPR Rule 20[13] and HRS § 560:1-302 (2006),[14] the ICA determined that the Probate Court had wide discretion to decline transferring the matter to the civil trials calendar or to permit discovery.  See In re Trust of Damon, mem. op. at 13.

---

[13]  "The court by written order may retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court."  HPR Rule 20(a).

[14]
　　　(a)  To the full extent permitted by the Constitution and except as otherwise provided by law, the court has jurisdiction over all subject matter relating to:

　　　　　(1) Estates of decedents . . . ;
　　　　　. . .
　　　　　(3) Trusts.

　　　(b)  The court has full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it.

HRS § 560:1-302.

16

Regarding the second point of error, Christopher and Myrna had relied upon <u>Mauna Kea Anaina Hou v. Board of Land & Natural Resources</u>, 136 Hawai'i 376, 363 P.3d 224 (2015), for their due process arguments. However, the ICA observed the record shows the Probate Court did not pre-judge the matter and carefully reviewed the Master's Report, <u>see</u> <u>In re Trust of Damon</u>, mem. op. at 10-11, in contrast to the facts presented in <u>Mauna Kea</u>. The ICA thus concluded this case was distinguishable from <u>Mauna Kea</u>. Furthermore, because Christopher and Myrna were granted the same access to the Master as the Trustees, and because the Master addressed their objections in her Report, their due process rights were not violated. In sum, the ICA concluded Christopher's and Myrna's due process arguments lacked merit. <u>See</u> <u>In re Trust of Damon</u>, mem. op. at 11.

As to the third point of error, the ICA summarized Christopher's and Myrna's arguments as follows: "Appellants contend that the Trustees committed spoliation because the Trustees either destroyed or lost the 1999-2002 receipts and invoices. Appellants argue that this destruction of evidence necessitates the presumption that the 1999-2003 Accounts Petition cannot be approved." <u>In re Trust of Damon</u>, mem. op. at 13. The ICA noted that the Master had extensively reviewed documents to ensure that the information contained in the Trust's accounting period was supported by other available

17

documents, and that there was no evidence of intentional document destruction. See id. at 15-16. Therefore, the ICA concluded that given Christopher's and Myrna's failure to overcome the presumption of good faith and regularity in favor of the Trustees, their spoliation argument lacked merit. See id. at 16.

With respect to the fifth and sixth points of error concerning Christopher's objections to the sale of the BancWest stock and various parcels of real estate, the ICA determined that the Probate Court did not err in affirming the Master's determination that Christopher's objections to those sales were barred by waiver and the doctrine of laches. See id. at 19. The Master had found that Christopher approved the stock sale, and the ICA noted that Christopher did not provide evidence to the contrary. See id. at 17. As to the real estate transactions, the ICA concluded that because Christopher did not object to them until over seven years later, the doctrine of laches applied, and therefore, Christopher's argument that the Probate Court erred by approving the Master's Report as to these transactions without first allowing him to review Trust records lacked merit. See id. at 17, 19.

## D. Applications for Writ of Certiorari

Christopher and Myrna each timely applied for a writ of certiorari from the July 11, 2016 Judgment entered by the ICA

pursuant to its June 2, 2016 Memorandum Opinion.[15]  Briefly stated, both Christopher and Myrna assert that the ICA gravely erred when it affirmed the Probate Court's adoption of the Master's Report.  They argue that the Master's Report should not have been adopted as they were not first granted access to Trust documents as they requested, or at a minimum, to the same Trust documents that were made available to the Master.  Without such access, they were unable to raise meaningful, specific objections to the Master's Report by way of their own experts' analyses or otherwise.  For example, Christopher argues that without access to Trust documents, he was unable to contest the Master's conclusion that he had waived any objections to the sale of BancWest stock.  Without the ability to raise meaningful objections for the Probate Court's consideration, Myrna additionally argues that the Probate Court "rubber stamped" the Master's Report.

According to both Christopher and Myrna, as beneficiaries, they have a right by way of statutory law, common law, and due process to obtain trust administration documents or information from the Trustees.  Myrna argues that any presumption of "regularity and good faith" afforded the Trustees does not abrogate the Trustees' duty to provide information related to

---

[15]  The questions presented by Christopher and Myrna are quoted at supra note 2.

19

the administration of the Trust when requested by a beneficiary, because such a duty: (1) is not discretionary, (2) is not "limit[ed] to time periods prior to the Petition being filed," (3) "does not end at the Probate Court door," and (4) is not curtailed by the appointment of a master. Christopher also asserts that the ICA erred when it stated he needed to justify his request for Trust documents before being granted access to them.

Christopher and Myrna also take issue with the Master's observation that certain Trust documents relating to the 1999-2003 accounting period were destroyed or missing. Christopher argues that this fact alone demonstrates a breach of fiduciary duty that requires the Probate Court to resolve "doubts or discrepancies" against the Trustees; Myrna argues that the Master's Report should not have been adopted by the Probate Court without a determination as to whether spoliation occurred. In either case, it appears that Christopher and Myrna assert that the Master's Report should not have been adopted because, at a minimum, they should have been granted access to the same documents as the Master in order to determine whether the Master was correct in stating that she could nevertheless verify the Trust accounts without the missing receipts or other documents, thus permitting them to raise appropriate objections to the

Probate Court if necessary. Myrna also appears to ask that this court clarify trust law and standards on spoliation.

Although Christopher had taken issue with the ex parte meetings held by the Master, at oral argument, counsel for both Christopher and Myrna indicated that the remedy they now seek is access to the Trust documents previously requested, including those reviewed by the Master, and for the case to be remanded.

With respect to Christopher's and Myrna's requests for documents, the Trustees do not dispute they have a duty to keep beneficiaries reasonably informed pursuant to HRS § 560:7-303. However, they assert that the duty is not unlimited, but rather extends only to requests that are reasonable. The Trustees emphasize that Christopher's and Myrna's requests for copies of documents reviewed by the Master were not reasonable because they were "very overbroad" "fishing expedition-type request[s]" and that the Hawai'i Probate Rules require that only the Master be granted unlimited access to Trust documents.

Moreover, the Trustees assert that they more than satisfied the disclosure requirements of HRS § 560:7-303 as they had provided annual voluminous records to beneficiaries and had an "'open door' policy [until the Estate office closed in 2007] where Beneficiaries could meet with the Trustees and Estate staff, review Estate records and documents, and ask questions on trust-related matters." According to the Trustees, both Myrna

21

and Christopher used that opportunity multiple times during the 1999-2003 accounting period.[16]  The Trustees acknowledged, however, that at no point in time were Christopher and Myrna granted access to each of the documents reviewed by the Master.

### III.  Standard of Review

"Interpretation of a statute is a question of law which [is] review[ed] de novo."  Kikuchi v. Brown, 110 Hawai'i 204, 207, 130 P.3d 1069, 1072 (App. 2006) (internal quotation marks and citation omitted).

### IV.  Discussion

The multiple issues raised by Christopher and Myrna fundamentally turn on the interpretation of HRS § 560:7-303, which grants beneficiaries the right to request of trustees "particulars relating to the administration" of the Trust, including access to documents.  Both Christopher and Myrna submitted requests for Trust documents to the Trustees.  When the Trustees declined to address their requests, Christopher and Myrna sought assistance from the Master.  When that route provided no relief,[17] they filed petitions with the Probate Court

---

[16]  The Trustees also point out that after the first master was disqualified due to a conflict of interest, see In re Estate of Damon, 119 Hawai'i 500, 199 P.3d 89, that Myrna attempted to raise additional objections before the subsequent master that were not initially raised before the first.  This does not appear to address Myrna's subsequent request for Trust documents, however.

[17]  The Master was correct in declining to resolve Christopher's and Myrna's requests for discovery and instead directing them to the Probate Court.

22

to compel the Trustees to provide the requested documents, to appoint a discovery master, or to transfer the case to the civil trials calendar so that discovery may proceed under the Hawai'i Rules of Civil Procedure. The Probate Court denied the motions, stating that with respect to the Petition to Compel, Christopher and Myrna had "no basis to compel the trustees to produce all the documents reviewed by the Master." Thus, at the core of Christopher's and Myrna's petitions and their appeals to this court are their requests for Trust administration documents pursuant to HRS § 560:7-303.

As conceded by the Trustees, a trustee's duty to inform beneficiaries under HRS § 560:7-303 does not cease when an accounting is filed in probate court or a master is appointed. For the following reasons, after considering the statute's plain language, its legislative history, and established treatises, we conclude that the ICA erred in affirming the Probate Court's denial of the Petition to Compel, and therefore also erred in affirming the Probate Court's "Order Granting Petition for Approval of 1999, 2000, 2001, 2002 and 2003 Income and Principal Accounts."

A. **The Plain Language of HRS § 560:7-303 Does Not Require a Beneficiary to Overcome the Presumption of Good Faith Afforded Trustees**

According to the ICA, Christopher's and Myrna's requests for Trust administration documents were not reasonable primarily

23

because Trustees had routinely provided beneficiaries with annual financial statements and accounts, and Christopher and Myrna failed to provide specific reasons why they needed documents beyond these statements. In particular, the ICA pointed out that because Christopher and Myrna were unable to articulate what they hoped to gain from the requested documents, they had "fail[ed] to meet their burden of overcoming the presumption of regularity and good faith of the Trustees." In re Trust of Damon, mem. op. at 8-9.

We now consider whether the factors considered by the ICA were appropriate in light of the plain language of HRS § 560:7-303, which states in relevant part:

> **Duty to inform and account to beneficiaries.** The trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration . . . . In addition:
>
> . . . .
>
>    (2) Upon reasonable request, the trustee shall provide the beneficiary with a copy of the terms of the trust which describe or affect the beneficiary's interest and with information about the assets of the trust and the particulars relating to the administration.
>
>    (3) Upon reasonable request, a beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of the trustee.

The relevant portion of the statute clearly imposes three separate duties on trustees. The first is an affirmative duty[18]

---

[18] See Eugene F. Scoles, "Administration of Trusts," in 2 Uniform Probate Code Practice Manual 588, 595 (Richard V. Wellman ed., 2d ed. Am. Law Inst. 1977) ("Scoles on Trusts") (characterizing the initial duty to inform
(continued . . .)

24

to "keep the beneficiaries . . . reasonably informed of the trust and its administration."  The second and third duties outlined in parts (2) and (3), respectively, spring to life "upon reasonable request" of a beneficiary.  Because these duties are distinct, a trustee's compliance with, for example, two of the three duties, does not abrogate responsibility for the third.

Accordingly, although trustees may fulfill their affirmative duty by supplying annual accountings to a beneficiary, trustees must still provide "information about the assets of the trust and the particulars relating to the administration" upon the beneficiary's "reasonable request." HRS § 560:7-303(2).  Put another way, by a plain reading of the statute, the distribution of annual accountings that may provide information similar to that requested does not alter the analysis of a request's "reasonableness" — it neither heightens the standard of "reasonableness" applied to beneficiary requests, nor does it undermine the degree of "reasonableness"

(. . . continued)
beneficiaries in [Uniform Probate Code] [s]ection 7-303 as an "affirmative" one).

The 1976 House Testimony Folder for S.B. 79 (later enacted and codified at HRS § 560:7-303) contained a copy of UPC Notes, July 1972.  For an analysis of the trust provisions in the UPC, that publication referred to an essay by Eugene F. Scoles, "Administration of Trusts," contained in the first edition of the Uniform Probate Code Practice Manual.  Although the first edition is not readily available, the second edition notes that Scoles' essay is "identical to that contained in the original Manual."  Scoles on Trusts, at 588.

of the requests.  The ICA therefore erred when it concluded that because the Trustees already provided beneficiaries with annual financial statements and accounts, Christopher and Myrna were required to provide additional reasons to overcome the presumption of regularity and good faith of the Trustees.

 That Christopher's and Myrna's requests "covered a large swath of information" also does not bear on whether their requests were "reasonable."  HRS § 560:7-303(2) does not condition a trustee's duty on the complexity or numerosity of a trust's transactions.  Unlike the legions of documents that might result from requests for unlimited access to trust records, which courts have denied, see, e.g., Bogert's on Trusts § 962 n.8 (3d ed. 2010) (cases cited), here, Christopher and Myrna requested the documents reviewed by the Master, who focused on discrete issues during a discrete period.  Thus, the volume of those documents relates more to the nature of the administrative activity of the Trust rather than to any unwieldly scope of the request, and therefore does not weigh against the "reasonableness" of Christopher's and Myrna's requests.  See, e.g., Strauss v. Superior Court, 224 P.2d 726, 731 (Cal. 1950) ("The fact that the [trustee] may find it inconvenient or troublesome to produce voluminous records will

26

**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

not defeat petitioner's right of inspection." (citations and internal quotation marks omitted)).[19]

The Trustees also argue that Christopher's and Myrna's requests were not "reasonable" because "open door" access had previously been granted to them. However, nothing in HRS § 560:7-303 restricts a beneficiary from obtaining access to trust administration documents because the beneficiary was previously granted access but did not take advantage of it at that time. Indeed, the Trustees fail to explain why Christopher's and Myrna's April 2012 requests in the Petition to Compel (filed consequent to the March 2012 Master's Report) were rendered unreasonable because of "open door" access that ended in 2007.

For these reasons, the ICA erred in concluding that Christopher's and Myrna's requests were not "reasonable." The plain language of the statute does not support consideration here of the factors applied by the ICA.

**B. Based on the Legislative History of HRS § 560:7-303 and Established Treatises, "Reasonable" Refers to the Time and Place at Which a Request Is Made, and Does Not Refer to the Scope of the Request**

The statute's legislative history and established trust treatises also do not support the ICA's conclusion that Christopher's and Myrna's requests for trust documents were not

---

[19] We observe that HRS § 560:7-303(2) does not require trustees to provide copies of all requested trust administration documents. Trustees may fulfill their duties by providing a sufficient or adequate opportunity to review and inspect these requested documents.

27

"reasonable." Rather, these sources indicate that "reasonable" in HRS § 560:7-303 refers to the time and place at which a request is made, and is not directed at the scope of the request.

Aside from a change of gendered terms, the relevant portions of HRS § 560:7-303 remain unchanged since the statute's inception in 1976. See 1976 Haw. Sess. Laws Act 200, § 1 at 466-67 (enacting S.B. 79). Additionally, the 1976 statute is nearly identical to the 1969 Official Text of the Uniform Probate Code ("UPC"), with the sole exceptions that parts (2) and (3) were instead denoted by (b) and (c) in the UPC, and that the UPC contained the word "relevant" prior to "information" in part (b). See Uniform Probate Code § 7-303 (1969). In sum, HRS § 560:7-303 (2006) is substantially the same as HRS § 560:7-303 (1976) and the 1969 UPC upon which the law was based. Because of this continuity, the legislative history of HRS § 560:7-303 (1976) is probative of the legislature's ongoing intent regarding a trustee's duty to inform.

That history, including the documents and testimony considered by the legislature, demonstrates a clear recognition that trustees have a duty to supply trust information to requesting beneficiaries. For example, the House Research Office's November 7, 1975 Comparison and Analysis of the Uniform Probate Code, included as part of the 1976 House Testimony

28

Folder for S.B. 79, specified, "The UPC imposes on the trustee the duty to account to beneficiaries rather than the court.  In addition, the trustee must supply the beneficiary with information concerning the terms and assets of the trust if requested."  House Research Office, Comparison & Analysis of the Uniform Probate Code (Nov. 7, 1975) (unpaginated; under the header for "Sec. 7-303. Duty to Inform and Account to Beneficiaries") (emphases added).  This House commentary echoes the careful analysis of the Judicial Council of Hawaii's 1972 Hawaii Probate Code Revision Project, which was chaired by Chief Justice William S. Richardson.  See William S. Richardson, "Letter on behalf of the Judicial Council of Hawaii to the Hon. David C. McClung, President of the Senate," Feb. 27, 1973 (submitting the Judicial Council's report to the legislature "in response to Act 128 of the 1970 Session," which appropriated funds "to study and review the probate laws of the State of Hawaii and to prepare for enactment in Hawaii, with appropriate conforming amendments, the Uniform Probate Code"); Judicial Council of Hawaii, Hawaii Probate Code Revision Project, The Uniform Probate Code (Hawaii) 384 (1972) ("[Section 7-303 of] [t]he U.P.C. imposes on the trustee the duty to account to beneficiaries rather than the court.  In addition, the trustee must supply the beneficiary with information concerning the terms and assets of the trust if requested." (emphases added)).

See also Judicial Council of Hawaii, Hawaii Probate Code Revision Project, at 383 (observing the UPC comment on section 7-303 states that "further information may be obtained by the beneficiary upon request").

In sum, neither the UPC commentary, the Judicial Council of Hawaii's analysis, nor the House Research Office's observations support an interpretation of the phrase, "upon reasonable request," as one that limits a beneficiary's access to only certain trust documents. Nothing in the legislative history of S.B. 79 states to the contrary. See, e.g., Conf. Comm. Rep. No. 24-76, in 1976 Senate Journal, at 872 (commenting on section 7-303 only insofar that part (1) was changed from the initial draft to "clarify who is entitled to receive notice of registration").[20]

This is in accord with the fundamental tenet that, "[f]or the reason that only the beneficiary has the right and power to enforce the trust and to require the trustee to carry out the trust for the sole benefit of the beneficiary, the trustee's denial of the beneficiary's right to information constitutes a breach of trust." Bogert's on Trusts § 961, at 3-4 (2d rev. ed.

---

[20] Indeed, section 813 of the 2010 Uniform Trust Code, "Duty to Inform and Report," which is derived from the 1969 UPC, "allows the beneficiary to determine what information is relevant to protect the beneficiary's interest" by requiring "a trustee [to] promptly respond to a beneficiary's request for information related to the administration to the trust," without any qualification that the request be "reasonable." Uniform Trust Code § 813(a) & cmt. (2010). Instead, a trustee's "[p]erformance is excused only if compliance is unreasonable under the circumstances." Id. (emphasis added).

1983).  Accordingly, so long as documents requested of a trustee pertain to "information about the assets of the trust and the particulars relating to the administration," any limitation on a beneficiary's access to trust administration documents imposed by the phrase," "upon reasonable request," is not based on the type or volume of the documents requested.

Although the UPC and the legislative history behind Act 200 do not expressly define the term, "upon reasonable request," at the time of the statute's implementation, the Restatement (Second) of Trusts illustrated what constituted a "reasonable request":

> **Duty to Furnish Information**
> The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

Restatement (Second) of Trusts § 173 (1959) (emphasis added). Although "at reasonable times" can be interpreted to modify either when the request must be made by the beneficiary, or by when the trustee must give information, commentary in the Restatement (Third) of Trusts points to the former:

> (2) Except as provided in § 74 or as permissibly modified by the terms of the trust, a trustee also ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings.

31

Restatement (Third) of Trusts § 82(2) (2007) (emphasis added);
see also Restatement (Third) of Trusts § 82 cmt. a (clarifying
that "on a reasonable basis" refers to a beneficiary's inquiries
being made at "reasonable hours and intervals").  As such,
whether a beneficiary's request for trust administration
documents pursuant to HRS § 560:7-303 is "reasonable" depends on
the time and place the request is made.

Bogert's on Trusts elaborates on the reasonableness of the
time and place of a request:

> If the beneficiary asks for relevant information
> about the terms of the trust, its present status, past acts
> of management, the intent of the trustee as to future
> administration, or other incidents of the administration of
> the trust, and these requests are made at a reasonable time
> and place and not merely vexatiously, it is the duty of the
> trustee to give the beneficiary the information which he
> has asked.

Bogert's on Trusts § 961, at 4 (2d rev. ed. 1983) (emphasis
added).

Thus, if a beneficiary's request for trust administration
documents[21] is made at a reasonable time and place and not
vexatiously or at unreasonable intervals, it should be

---

[21]  Unless ordered by a court, "trust administration documents" do not include
sensitive personal information about other beneficiaries, such as the
diagnosis of a serious illness, that may be in the possession of trustees.
See Restatement (Third) of Trusts § 82 cmt. f ("When a beneficiary's request
for information may encompass sensitive, private information acquired by the
trustee about other beneficiaries, the extent of the trustee's duties may
require a balancing of competing interests.  While recognizing the requesting
beneficiary's 'need to know' . . . , a trustee — and ultimately a court — may
need to provide some response that offers a compromise between the
confidentiality or privacy concerns of some and the interest-protection needs
of others.").

considered a "reasonable request" for the purposes of HRS § 560:7-303.

The record here shows that the requests were neither vexatious nor made at unreasonable times.  Rather, in multiple hearings on the issue prior to the issuance of the Master's Report, the Probate Court explained that Christopher's and Myrna's requests for documents would be considered after the filing of the Master's Report.  Although a probate court has the discretion to decide whether a probate matter is transferred to the civil trials calendar, or whether to retain the matter and permit discovery, a probate court's discretion as to a beneficiary's request for trust administration documents under HRS § 560:7-303 is limited to determining whether the request falls within the scope of the statute, i.e., was made at a reasonable time and place and not vexatiously.[22]

Accordingly, the ICA erred in affirming the Probate Court's approval and adoption of the Master's Report without first granting Christopher's and Myrna's requests to access Trust administration documents.  The ICA too narrowly construed the scope of HRS § 560:7-303 and inappropriately determined that the statute was trumped by the presumption of regularity and good

---

[22]  The probate court retains broad discretion to consider all the circumstances of a case, including the volume of documents requested, in determining whether a request was made vexatiously.  As noted in Part IV.A., however, the potential burden on trustees due to a large volume of requested documents, alone, does not render a request unreasonable or vexatious.

faith typically afforded trustees.[23]  Rather, pursuant to HRS §
560:7-303, Christopher's and Myrna's requests for access to
Trust administration documents that were reviewed by the Master
should have been granted.  Any other requests for Trust
documents pursuant to HRS § 560:7-303 by Christopher and Myrna
should be evaluated on remand as to whether they were made at a
reasonable time and place and not merely vexatiously.

### V.  Conclusion

For the foregoing reasons, we vacate the Probate Court's
August 2, 2012 Judgment and the ICA's July 11, 2016 Judgment on
Appeal filed pursuant to its June 2, 2016 Memorandum Opinion as
to the Probate Court's "Order Denying Beneficiary Christopher
Damon Haig's Petition to Compel Production of Documents and
Continue Deadline to Respond to Master's Report, Filed April 18,
2012" and "Order Granting Petition for Approval of 1999, 2000,
2001, 2002 and 2003 Income and Principal Accounts."  The Probate
Court's August 2, 2012 Judgment and the ICA's July 11, 2016
Judgment on Appeal are otherwise affirmed.  This matter is

---

[23] The court need not reach the issue of spoliation.  As Christopher and Myrna have not yet been granted access to Trust documents to determine if the Master's conclusions regarding the loss of trust documents was indeed unproblematic or harmless to the approval of the accounts, it would be premature for this court to clarify the law of spoliation at this time.

remanded to the Probate Court for proceedings consistent with this opinion.

A. Bernard Bays and Michael C. Carroll for petitioner Christopher Damon Haig

Rebecca A. Copeland, Peter Van Name Esser, and Thomas R. Sylvester for petitioner Myrna B. Murdoch

J. Thomas Van Winkle, Duane R. Miyashiro, and Melissa H. Lambert for respondent Trustees under the Will and of the Estate of Samuel M. Damon

George W. Van Buren for respondents Brendan Damon Ethington and John Philip Damon

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

